JOSEPH McDONOUGH, PETITIONER-DEFENDANT, v. SEARS, ROEBUCK AND CO., RESPONDENT-PROSE-CUTOR.

Submitted October 1, 1940—Decided July 25, 1941.

Before Justices DONGES and HEHER.

For the prosecutor, *Frederick J. Gassert.*

For the defendant, *Waugh, Torppey & Consodine* (*William A. Consodine,* of counsel).

The opinion of the court was delivered by

HEHER, J. The point in question is whether an accidental injury suffered by an employee of prosecutor while undergoing hospital treatment for an injury concededly within article 2 of the Workmen's Compensation Act (*R. S.* 1937, 34:15-7, *el seq.*) is also compensable thereunder as a consequent of the original industrial mishap.

The first accident occurred on March 30th, 1937. It resulted in the amputation of the employee's left index finger. On April 14th ensuing, while still convalescing at the hospital, an alcohol dressing of the injured member ignited when he struck a match to light a cigarette, and the resultant burns were so severe as to require the amputation of the remaining fingers and the thumb.

The Compensation Bureau dismissed the petition for compensation. The Essex Court of Common Pleas ruled that "the alcohol on the bandage was part of the treatment that was necessitated by the original accident;" that it "was an added (if not unusual) hazard the presence of which was necessitated and caused by" that casualty; and that it "constituted an effective, contributing, essential cause of the fire and the accompanying burns, and of the consequent amputation of the fingers," and hence "an unbroken chain of causation is established;" and there was an award accordingly. We do not entertain this view.

The question is a mixed one of law and fact. Though this statutory cause of action is not predicated upon a violation of duty classable as negligence, and so the principle of liability for the natural and proximate results of such misconduct has no application, it is yet requisite that there be a chain of physical causation between the industrial accident and the injury. The chain of causation must be continuous. It if be broken by an intervening independent cause, the indus-

trial mishap is deemed in law *causa remota* as regards the new injury. The essential relationship does not exist unless the accident be a proximate contributing cause of the injury. The statute comprehends only such disability as ensues from an accident arising out of and in the course of the employment. This provision is not to be extended beyond its fair implications. The employer is chargeable with the direct consequences of the accident and not with those only remotely flowing therefrom. *Newcomb* v. *Albertson,* 85 *N. J. L.* 435; *Selak* v. *Murray Rubber Co.,* 8 *N. J. Mis. R.* 838; *affirmed,* 108 *N. J. L.* 548; *Tulino* v. *Ford Motor Co.,* 111 *Id.* 435; *Hall* v. *Doremus,* 114 *Id.* 47; *Kuczynski* v. *Humphrey,* 118 *Id.* 321; *Flanagan* v. *Charles E. Green & Son,* 121 *Id.* 327; *affirmed,* 122 *Id.* 424. See, also, *City of Milwaukee* v. *Industrial Commission,* 160 *Wis.* 238; 151 *N. W. Rep.* 247; 127 *A. L. R.* 1108.

In short, the inquiry is whether the injury is reasonably attributable to a proximate cause set in motion by the accident rather than by some other agency. In *Selak* v. *Murray Rubber Co., supra,* the workman sustained a fracture of his left forearm, and was granted compensation therefor. He returned to his work in February, and during the following October, while on his way home, slipped and fell on the highway and again suffered a fracture of the left forearm in the same place. The Compensation Bureau found that "boney union was far from complete, and that because of this weakness, due to the primary industrial accident, a condition existed which caused a secondary event to prolong the disability." It was pointed out that the "medical testimony was definite, that the original fracture" was "responsible for the present condition." In adopting that conclusion, this court said that it was well grounded in the testimony of the single medical witness called that "the injury was due to a threefold condition: the earlier fracture; the failure to form a proper union and the subsequent injury;" and that, "had the bones firmly grown together the second accident would not have caused a fracture—the pre-existing condition causing the arm to be weakened." See, also, *Lazzio* v. *Primo Silk Co.,* 114 *N. J. L.* 450; *affirmed,* 115 *Id.* 506.

Such is the rule in England, whose compensation act is the prototype of ours; and it will not be amiss to refer to some of the adjudications of the appellate tribunals of that country interpreting and applying the like basic provision.

In *Clover, Clayton & Co., Ltd.,* v. *Hughes* (1910), *A. C.* 242, Lord Loreburn for the House of Lords declared the question is whether "the accident is one of the contributing causes without which the injury which actually followed would not have followed." There, the causal connection was not interrupted by an intervening agency. While tightening a nut with a spanner, the workman suffered a rupture of an aneurism so diseased that it might have burst at any time. In *Noden* v. *Galloways, Ltd.* (1912), 1 *K. B.* 46, this rule was modified so as to exonerate the employer from liability where an injured employee meets with a second accident in another employment. There, the lower tribunal applied Lord Loreburn's doctrine of "contributing cause" in its widest sense; and it was held that the judge had misdirected himself. Fletcher Moulton, L. J., said: "When a second cause intervenes and produces the incapacity and that second cause is in the nature of an accident, it is the second employer who is liable."

And in the case of *Dunham* v. *Clare* (1902), 2 *K. B.* 292, Collins, M. R., laid it down thus: "If death in fact resulted from the injury, it is not relevant to say that death was not the natural or probable consequence thereof. The question whether death resulted from the injury resolves itself into an inquiry into the chain of causation. If the chain of causation is broken by a *novus actus interveniens,* so that the old cause goes and a new one is substituted for it, that is a new act which gives a fresh origin to the after-consequences. In dealing with an obligation created by the act, we are not dealing with a case of contract or tort or with a liability of a criminal nature. In the case of contract, a person who commits a breach of it is liable for the consequences which naturally follow from the breach. So, too, in cases of tort, when the question arises whether a person is liable in respect of a breach of some duty imposed upon him, he probably, and in some cases certainly, comes under a somewhat larger

liability than would be the case if it were a breach of contract, but still the liability is measured by what are the reasonable and probable consequences of his breach of duty. That lets in the consideration of reasonableness. No question of reasonableness comes into the present discussion. The act has imposed the liability irrespective of any error of judgment or negligence on the part of the employer. The only question to be considered is, Did the death or incapacity in fact result from the injury? The county court judge, by inquiring whether death was the natural or probable consequence of the injury, has applied the wrong standard to the solution of the question. It is quite consistent to say that death resulted from the injury and yet that it was neither the natural nor the probable consequence of it. If no new cause, no *novus actus*, intervenes, death has in fact resulted from the injury." Obviously, it does not aid the injured employee here that our scheme of compensation is grounded in the mutual agreement of the parties.

In *Brown* v. *George Kent, Ltd.* (1913), 3 *K. B.* 624, the workman sustained an injury of the knee, and in consequence it became necessary to remove a cartilage therefrom. The operation was successful, but shortly thereafter the patient developed scarlet fever. The wound suppurated, and a second operation was performed by which the knee joint was excised. The result was a stiff knee joint and a shortening of the leg. It seems to have been conceded that, if not for the accident and the consequent injury to the knee, the scarlet fever could not have caused the injury or incapacity in question. The Court of Appeal held: "If the incapacity is the result of the accident, the chain of causation remains unbroken, although a fresh cause arising casually and 'uninvited' by any special condition of the workman may have aggravated the original injury. Whether there existed any lowered vitality of the workman in the present case, or whether such condition did or did not invite the scarlet fever, is not material, when once it is established that the incapacity is the result of the original accident, from the direct effects of which the workman never recovered; and if the scarlet fever encouraged the suppuration of the wounded knee, it matters

not whether the germ entered the wound or through his mouth." For another interesting application of the principle, see *Williams* v. *Graigola Merthyr Co., Ltd.* (1925), 132 *LTNS* 227. Terming the rule laid down in *Dunham* v. *Claire, supra,* "a working and practical test," Pollock, M. R., accentuated the phrase "the old cause goes;" and affirmed an award of compensation where inexpert lay treatment of an injury was responsible for the introduction of tetanus germs following an operation upon the workman's knee. He held that "it was the lancing of the knee due to the original industrial disease which let in the germ," and so that which supervened could not be attributed to a *novus actus interveniens.*

The damage here is in this respect clearly distinguishable from the consequences of medical or surgical treatment of a compensable injury. Such treatment does not ordinarily constitute a *novus actus interveniens;* there is a direct causal link between the industrial accident and the incapacity flowing from medical or surgical measures to effect rehabilitation. In *Shirt* v. *Calico Printers' Association* (1909), 2 *K. B.* 51, Cozens-Hardy, M. R., laid down the true test to be "whether the step taken to obviate the consequences of the accident and to make the man a sound, able-bodied man was a reasonable step to take." See, also, *Honnold on Workmen's Compensation,* §§ 136, *et seq.* Nor is negligence in the giving of such treatment a differentiating factor. *Flanagan* v. *Charles E. Green & Son, supra;* 71 *C. J.* 641, *et seq.*

But the employee's negligence in the care of the injury is not in the same category as carelessness in the doing of the master's work. It may serve to break the chain of causation. In *Selak* v. *Murray Rubber Co., supra,* it was said: "If a reasonably prudent person innocently aggravates the harmful effect of the original injury the original wrongful cause continues to the end, and accomplishes the final result." *Vide Belyus* v. *Wilkinson, Gaddis & Co.,* 115 *N. J. L.* 43; *affirmed,* 116 *Id.* 92. For a similar case in a sister jurisdiction, see *Fischer* v. *R. Hoe & Co., Inc.,* 230 *N. Y. S.* 755. And compare *Saenger* v. *Locke,* 220 *N. Y.* 556; 116 *N. E. Rep.* 367. See, also, collation of cases in *Schneider's Workmen's Compensation Law,* § 234. Here, the workman, though he

vigorously denied the attending physician's testimony that he had warned him of the hazard of smoking under the circumstances, acknowledged that he had informed him "there was alcohol on the bandage," and that he (the employee) "knew alcohol is inflammable."

Thus it is that the industrial accident is not classable as a proximate contributing cause of the hurt ensuing from the second accident; and, since it is conceded that full compensation has been rendered for the disability attributable to the original injury, the judgment of the Essex Court of Common Pleas is reversed, and the judgment of the Compensation Bureau is affirmed, without costs.