RONALD C. AMEY, JR., PETITIONER–APPELLANT, v.
FRIENDLY ICE CREAM SHOP,
RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted January 3, 1989—Decided February 24, 1989.

Before Judges DEIGHAN and D'ANNUNZIO.

*Angelo J. Falciani, P.A.*, attorney for appellant (*Scott J. Lewis* on the brief and reply letter brief).

*Capehart & Scatchard, P.A.*, attorneys for respondent (*John H. Geaney* on the brief).

The opinion of the court was delivered by

DEIGHAN, J.A.D.

Petitioner Ronald C. Amey, Jr. appeals from an order entered by the Workers' Compensation Court denying him medical and temporary as well as permanent benefits for a re-injury of the flexor tendon of his right hand on January 21, 1986.

It was stipulated that petitioner sustained a compensable injury to his right hand on December 14th, 1985 while in the course of his employment with respondent Friendly Ice Cream Shop. As a result, he came under the care of Dr. A. Lee Osterman, M.D., at the Hospital of the University of Pennsylvania. On December 20, 1985, Dr. Osterman performed a surgical repair of the flexor tendon of petitioner's right hand. On January 21, 1986, before petitioner had returned to work and before he had been discharged by Dr. Osterman, petitioner re-injured his right hand while working on his car at home. The injury involved a re-rupture of the previously repaired tendon. Dr. Osterman repaired the ruptured tendon, but petitioner lost additional time from work.

Respondent concedes that it is responsible for temporary disability benefits and for the payment of medical bills up to January 20, 1986 but denies liability for any temporary or permanent disability or medical treatment after that date. The Workers' Compensation Court was presented with the issue as to whether the injury of January 21, 1986 was a direct result of the original injury of December 14, 1985, in which case respondent would be responsible for those medical expenses, temporary disability and permanent disability resulting therefrom, or whether the chain of causation from the injury of December 14,

1985 had been broken by the intervening accident, in which case respondent would not be liable.

It was stipulated that all other issues, including rates of compensation, amounts of medical bills, amounts of temporary and permanent partial disability, be held in abeyance pending resolution of the basic issue of liability for the December 14, 1985 injury.

Following the operative procedure performed by Dr. Osterman on December 20, 1985, petitioner was instructed to continue to see Dr. Osterman for follow-up care and was also directed to undergo physical therapy. Dr. Osterman gave petitioner specific instructions on care for the injured hand, and cautioned him on the use of his hand.

The deposition of Dr. Osterman was taken *de bene esse*. He testified that, under the operative procedure and mobilization technique which he followed, activity was recommended, but there could be a rupture or re-injury rate of 10 to 15 percent. Dr. Osterman cautioned petitioner concerning limitations of his activities. He was directed: (1) to keep his splint on and not remove it; (2) not to lift things; (3) not to make a full fist, and (4) not to squeeze his fist.

Dr. Osterman testified that petitioner had been cautioned to follow these strict directions. According to Dr. Osterman he discussed with petitioner the percentage of cases of this type which rupture and the need to follow the strict protocol if he was to get a good result. In addition, Dr. Osterman testified that petitioner's activity on January 21, 1986 was the immediate cause of the rupture.

Dr. A. Gregory McClure testified on behalf of respondent. He concurred with the opinion of Dr. Osterman that the petitioner's activity was directly related to the re-rupture of the tendon. He also testified that 85% to 90% of hands repaired using this procedure do not rupture. As to the 10% to 15% which do rupture, he stated that it was almost always the result of a force being applied to the healing tendon which causes the

rupture. He commented that it is very rare for the tendon to rupture spontaneously. Dr. McClure reviewed the restrictions on use of the hand which Dr. Osterman had placed on petitioner and concluded that petitioner had exceeded the recommended use.

The workers' compensation judge then reviewed the relevant cases on the issue. *Selak v. Murray Rubber Co.*, 8 *N.J.Misc.* 838 (Sup.Ct.1930), aff'd o.b. 108 *N.J.L.* 548 (E. & A. 1932) established the principle that "[i]f a reasonably prudent person innocently aggravates the harmful effect of the original injury the original wrongful cause continues to the end, and accomplishes the final result." *Id.* at 839 (citations omitted); *accord, McDonough v. Sears, Roebuck & Co.*, 127 *N.J.L.* 158, 163 (Sup.Ct.1941), aff'd 130 *N.J.L.* 530 (E. & A. 1943). However, in *McDonough*, the court denied petitioner's argument that the second injury would not have occurred but for the first injury to his hand. The court found that petitioner violated specific warnings of the treating physician, and held that the violation constituted an intervening agent severing the causal relationship between the original accident and the subsequent injury. 127 *N.J.L.* at 163–164.

Judge Stransky summarized petitioner's testimony concerning the manner in which he re-injured his right hand:

[Petitioner] testified that he was [using a wrench to tighten an alternator] belt on his car. He had been using the left hand, so as not to put pressure on the right. He understood that Dr. Osterman had told him he was not to put pressure on the right hand. He then inadvertently took the wrench in his right hand and pushed down on the wrench, at which time he heard a popping noise, which he later learned, was the tendon rupturing. He demonstrated to the Court how he had pushed down on the wrench with the palm of his injured hand.

Judge Stransky analyzed the instruction given by Dr. Osterman, the interpretation of the instructions by Dr. McClure and the petitioner's testimony on his understanding of those instructions, as well as petitioner's description of his activity at the time of the second injury. He then concluded:

> These instructions should not be read as permitting the Petitioner to do anything not expressly prohibited. Dr. Osterman repeatedly made it clear to Petitioner that he was to be careful as to his use of the hand. He did not, in so many words, tell Petitioner not to use a wrench to tighten a belt on his car, but he did say that Petitioner should not put pressure on that hand, and he advised him as to what could happen if he did so.

$$* \quad * \quad * \quad * \quad * \quad * \quad * \quad *$$

> The Court is of the opinion that the activity of the Petitioner was negligent, in that it went far beyond the reasonable use of the hand which would occur in Petitioner's normal daily activities. It was such an independent intervening accident as to break the causal relationship between Petitioner's original compensable accident and the new injury with its related medical treatment.

On this appeal, petitioner contends that the compensable accident on December 14, 1985, and subsequent treatment and disability was a proximate cause of the injury sustained on January 21, 1986. He also contends that the workers' compensation judge's determination that petitioner was negligent is not supported by sufficient credible evidence in the record. We disagree.

From our review of the record, the findings made by Judge Stransky could reasonably have been reached on sufficient credible evidence in the record as a whole, especially given the demonstration by petitioner as to how he attempted to tighten the belt of the car by placing the wrench in the palm of his hand. *See Close v. Kordulak Bros.*, 44 *N.J.* 589, 599 (1965); *Evans v. Lenox, Inc.*, 121 *N.J.Super.* 407, 408 (App.Div.1972), certif. den. 62 *N.J.* 258 (1973). There is sufficient credible evidence proof that the incident which occurred on January 21, 1986 was an independent, intervening cause, sufficient to break the causation chain of events.

Petitioner relies extensively on *Randolph v. E.I. duPont de Nemours & Co.*, 130 *N.J.L.* 353 (Sup.Ct.1943) and *Kelly v. Federal Shipbuilding & Dry Dock Co.*, 1 *N.J.Super.* 245 (App.Div.1949) in support of his contention that the subsequent injury was proximately caused by the previous compensation injury. In *Randolph*, petitioner suffered a compensable injury and was instructed to wear dark glasses. 130 *N.J.L.* at 354.

Two months later, petitioner fell down a stairway because his vision was obscured by the glasses. As a result, he lost an eye. *Id.* The court held that the subsequent injury was reasonably attributable to the original accident. 130 *N.J.L.* at 355.

In *Kelly v. Federal Shipbuilding and Dry Dock Co.,* petitioner sustained a compensable injury which required that his leg be placed in a cast. 1 *N.J.Super.* at 247. After it was set, the doctor gave the petitioner permission to walk. Three weeks later, petitioner broke his right wrist while attempting to save a child from falling down a flight of steps. Apparently, the accident occurred primarily because the lower portion of the cast contacted a step, causing petitioner to lose his balance. 1 *N.J.Super.* at 247. At trial a medical expert gave the opinion that the fall was a direct result of the cast. *Id.* The Court concluded that the second injury was directly connected to the first injury. *Id.* at 248.

Larson, in his treatise, comments upon these two cases and suggests that they fall into the first of two different categories of cases. *Larson,* 1 *Larson Workmen's Compensation Law,* § 13.12 at 3–392 to 3–393 (1988):

> In these and various related cases the second injury appears to have been purely accidental, and no substantial question of independent intervening cause based on the claimant's conduct has figured in the decision. [*Id.*]

The second category involves cases in which it has been held that the petitioner's negligent act was an intervening cause which broke the chain of causation. *Id.* at 3–393. Professor Larson offers this explanation of the difference between the two concepts:

> When the injury following the initial compensable injury arises out of a quasi-course activity, such as a trip to the doctor's office, the chain of causation should not be deemed broken by mere negligence in the performance of that activity, but only by intentional conduct which may be regarded as expressly or impliedly prohibited by the employer. [*Larson, supra,* § 13.11(d) at 3–380; *accord, Selak v. Murray Rubber Co,* 8 *N.J.Misc.* 838.]

However,

> [w]hen, ... the injury following the initial compensable injury does not arise out of a quasi-course activity, as when a claimant with an injured hand engages in a boxing match, the chain of causation may be deemed broken by either intention-

al or negligent claimant misconduct. [*Larson, supra,* § 13.11(d) at 3–380; *accord, McDonough v. Sears, Roebuck & Co.,* 127 *N.J.L.* 158.]

Thus, "compensability can be defeated by a certain degree of employee misconduct, and ... that degree is something beyond simple negligence, and can best be described as an intentional violation of an express or implied prohibition in the matter of performing the act." *Larson, supra,* § 13.11(d) at 3–380. "As to what constitutes negligence, in these cases it often takes the form of rashly undertaking a line of action with knowledge of the risk created by the weakened member." *Larson, supra,* § 13.12 at 3–394.

Accordingly, we find no merit to petitioner's contentions that the original compensable accident was the proximate cause of his subsequent injury.

AFFIRMED.