[No. 36374.    En Banc.    June 25, 1964.]

CECIL MCDOUGLE, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.**

*William A. Stiles, Jr.,* for appellant.

*The Attorney General, John J. Quine* and *Franklin K. Thorp, Assistants, Bell, Ingram & Smith,* and *Louis A. Bell,* for respondent.

HILL, J.—We are here concerned with an application for the reopening of a claim for treatment because of a pre-existing industrial injury.

*Reported in 393 P. (2d) 631.

This case points up a misunderstanding shared by the Department of Labor and Industries, the Board of Industrial Insurance Appeals, and the trial court as to the type of incident that may precipitate an aggravation.

The claimant had, in the course of his employment, slipped and twisted his back on July 28, 1955, as a result of which he suffered a sacroiliac strain and an aggravation of a pre-existing osteoarthritic condition. His claim, based on this injury, was closed by a departmental order dated July 31, 1957, with an award of $1,800; this was for permanent partial disability to the extent of 30 per cent of the maximum allowed for an unspecified disability. No appeal was taken from this order.

Thus we start our consideration of our present problem with an individual who has a 30 per cent permanent partial disability based on a back injury. Such a disability implies the possession of considerable ability to participate in the usual affairs of life. It should be anticipated that he will engage in many varieties of activities—including recreation, taking care of his home, helping his neighbors, and in gainful employment—all commensurate with his existing physical ability.

We come now to the critical incident in this case. On November 12, 1958, the claimant, as a friendly gesture, did some work for his brother-in-law. In answering the question, "About how long did you work for him?" he testified:

"I wouldn't say, it wasn't very long. It was a few minutes. I happened to be visiting and talking with him and him and the hired man was unloading some ground feed,[1] and he was loading it out of the van truck onto one of those cars and he was taking them to the grainary and visiting there with him, I got a load and helped and the next day I had to go in for treatments."

(This is the extent of the testimony as to what the claimant actually did on November 12, 1958.)

---

[1] There is reference in findings and in the briefs to "sacks of grain." This comes from the testimony of the doctor concerning the history of the incident he had received from the claimant, which involved handling a 60-pound sack of oats.

He experienced no pain at the time he was lifting the sacks of ground feed, but the next morning he was quite sore and went to see Dr. William V. King, his family physician. The doctor testified that he treated the claimant five times between November 13 and December 1, 1958, giving him "a muscle relaxant in the form of a drug known as Tubo-Kurare and diathermy treatments" for muscle spasm and pain in the low back. The doctor prepared the application, made to the department, for a reopening of the claim to secure treatment for the claimant.

It is the claimant's position that his lifting of the sacks of ground feed on November 12, 1958, aggravated his pre-existing condition and that he is entitled to have his claim reopened for treatment, and a determination after treatment of whether or not there has been an increase in the percentage of disability.

The claimant's application for reopening was denied by the Supervisor of Industrial Insurance solely on the grounds that the claimant's "present low back condition is attributable to a new injury occurring on November 12, 1958."

An appeal to the Board of Industrial Insurance Appeals followed.

The testimony of Dr. King, in the record before the Board, fully supports the claimant's contention that his condition—when he went to the doctor following the sack-lifting incident on November 12, 1958—was worse than it had been on July 31, 1957, when his claim was closed with the 30 per cent disability to which we have referred; and that it was also worse on the date the supervisor made his order refusing to reopen (April 17, 1959). The doctor's opinion to that effect was based "On his [claimant's] increased amount of pain, his actual objective findings of both stiffness and muscular spasm on motion of low back." The doctor (the only medical witness) specifically disposed of the supervisor's reason for refusing to reopen the claim, *i.e.*, a new injury, by testifying that there was no new injury, but an aggravation of the pre-existing injury.

The doctor, when asked as to any change of condition between July 31, 1957 (the date of the closing order finding

the 30 per cent disability) and the present time (he testified on November 24, 1959), replied that the claimant:

". . . has suffered from a condition relative to an original back injury that consists both of muscle spasm and pain of the low back resulting from the injury which were superimposed upon an old osteoarthritis."

The Board, with no testimony before it but that of the claimant and Dr. King, found that:

"On or about November 12, 1958, the claimant suffered an acute exacerbation or aggravation of his low back condition which necessitated medical treatment, but such aggravation was due to a new intervening independent cause, namely, lifting a sack or sacks of grain on that date." Finding No. 3.

The Board affirmed the supervisor on the basis of this finding.

On appeal to the superior court and a trial de novo on the Board record, the trial judge made the following findings:

"The plaintiff sustained a new injury to his back on November 12, 1958, while engaged in the unloading of sacks of grain from a truck at which time he was not engaged in extra hazardous employment under the Workmen's Compensation Act." Finding No. 5.

"The increased pain, stiffness and muscular spasm on motion of the low back which was found on physical examination on November 13, 1959, and which aggravated condition required medical treatment thereafter, was caused by the November 12, 1958, injury operating upon the pre-existing condition of weakness in the back." Finding No. 6.

Based on these findings, the superior court entered an order affirming the Board of Industrial Insurance Appeals.

The claimant appealed to this court. The Department's position before this court seems to be that the application to reopen for treatment was properly denied because any consequence of the claimant's handling of the ground feed on November 12, 1958, was not compensable, being the result of an independent intervening cause.

The testimony of Dr. King, as we have outlined it, clearly met the requirements for the reopening for further medical

treatment laid down in *Phillips v. Department of Labor & Industries* (1956), 49 Wn. (2d) 195, 298 P. (2d) 1117, and in *Wilber v. Department of Labor & Industries* (1963), 61 Wn. (2d) 439, 378 P. (2d) 684.

■ The supervisor, the Board of Industrial Insurance Appeals, and the trial court were all apparently under the impression that any condition caused by the lifting of the ground feed was not compensable even though, as found by the trial court, it operated upon and aggravated the pre-existing disability. In this they were mistaken. Aggravation of the claimant's condition caused by the ordinary incidents of living—by work which he could be expected to do; by sports or activities in which he could be expected to participate—is compensable because it is attributable to the condition caused by the original injury. See *Head Drilling Co. v. Industrial Acc. Comm.* (1918), 177 Cal. 194, 170 Pac. 157 (arising from dining room table); *Eide v. Whirlpool Seeger Corp.* (1961), 260 Minn. 98, 109 N. W. (2d) 47 (playing badminton); *Hartman v. Federal Shipbuilding & Dry Dock Co.* (County Ct. 1951), 11 N. J. Super. 611, 78 A. (2d) 846 (condition worsened by subsequent incidental daily occurrences); *Kelly v. Federal Shipbuilding & Dry Dock Co.* (1949), 1 N. J. Super. 245, 64 A. (2d) 92 (fell at wedding reception trying to prevent child from falling on a step); *Dickerson v. Essex Cy.* (1956), 2 App. Div. (2d) 516, 157 N.Y.S. (2d) 94 (claimant fell down a flight of stairs while on crutches as a result of prior injury); *Makoff Co. v. Industrial Comm.* (1962), 13 Utah (2d) 23, 368 P. (2d) 70 (reached for a pair of pants while at home); *Harnischfeger Corp. v. Industrial Comm.* (1948), 253 Wis. 613, 34 N. W. (2d) 678 (walking). In the *Dickerson* case, *supra*, the court said that the workman's conduct was neither improper nor unreasonable; neither temerarious nor rash.

On the other hand, the following cases recognize that aggravation caused by activities in which the claimant could not, because of his existing disability, reasonably expect to engage without injury, would not be compensable. *Yarbrough v. Polar Ice & Fuel Co.* (1948), 118 Ind. App.

321, 79 N. E. (2d) 422 (claimant, knowing right knee was weak and gave way under him on occasion causing him to fall, elected to carry a bundle of trash down his basement stairs, which occupied both his hands; knee gave way and he fell, sustaining serious injuries. Held no recovery; test was whether such conduct was that of an ordinarily prudent and cautious man under the circumstances); *McDonough v. Sears, Roebuck & Co.* (Ct. Er. & App. 1943), 130 N.J.L. 530, 33 A. (2d) 861 (Supreme Court 1941, 127 N.J.L. 158, 21 A. (2d) 314), (workman had injured hand; while in hospital bandaged hand kept wet with alcohol; warned not to smoke, but got hold of a cigarette and tried to light it; suffered burns); *In re Sullivan v. B & A Constr., Inc.* (1954), 307 N. Y. 161, 120 N. E. (2d) 694 (as result of several industrial accidents, claimant's right knee frequently locked, causing him to lose entire use of right leg and rendered him incapable of using the foot brake; locked while driving on personal business, resulting in collision which caused other injuries. The court said: "When claimant ignored his locking knee and, without justification, continued to drive, responsibility for the accident and its consequences could no longer be ascribed to his employment-created disability."); *Kill v. Industrial Comm.* (1915), 160 Wis. 549, 152 N. W. 148 (claimant had cut his wrist and the cut became infected; would have been completely cured in a short time had he not entered into a boxing contest with knowledge of the danger he was incurring. The wrist was reinjured; the infection reactivated in consequence, and use of hand was lost. Held: own act responsible for his disability).

The test to be applied, in cases such as the present, is whether the activity which caused the aggravation is something that the claimant might reasonably be expected to be doing, or whether it is something that one with his disability would not reasonably be expected to be doing. See 1 Larson, Workmen's Compensation Law § 13.11, p. 183.

█ We cannot, nor can the trial court, the Board, or the Department say that because an individual has a 30 per

cent permanent partial disability based on a back injury, that he is thereby precluded from doing any lifting, and that any injury sustained from any lifting is not attributable to his prior injury because it is an intervening cause. Whether it was a reasonable thing for this particular claimant to do, is a different question—never considered by the Department, the Board, or the trial court.

We are not deciding that the claimant's claim should be reopened. There is testimony from both Dr. King and the claimant which indicates that anything which placed a strain on his back would lead to a temporary exacerbation of his condition; such testimony may have a bearing on whether he acted reasonably. We are deciding that the reasons given for not reopening the claim do not constitute a sufficient justification for that action, but indicate a disposition of this case on a fundamentally wrong basis.

The trial court is reversed, and it is directed to set aside the order of the Board of Industrial Insurance Appeals, which affirmed the supervisor, and to direct that Board to refer the matter back to the supervisor for further consideration in the light of this opinion.

OTT, C. J., DONWORTH, WEAVER, ROSELLINI, HAMILTON, and HALE, JJ., concur.

FINLEY, J. (concurring in the result)—I concur in the result, but would prefer a disposition directing the supervisor to re-open the workman's claim of aggravation.

HUNTER, J. concurs with FINLEY, J.