112 P.3d 516 (2005)
COWLITZ STUD COMPANY, Respondent,
v.
Dana CLEVENGER and Department of Labor and Industries, Appellants.
No. 30085-1-II.
Court of Appeals of Washington, Division 2.
March 22, 2005.
Publication Ordered May 24, 2005.
*517 Steve Vinyard, Attorney at Law, Olympia, WA, Robert Rees Hall, Attorney at Law, Longview, WA, for Appellants.
Craig Alan Staples, Attorney at Law, Vancouver, WA, for Respondent.
HOUGHTON, J.
¶ 1 In 1997, Dana Clevenger sustained an industrial injury while employed by Cowlitz Stud Company, a lumber mill. Cowlitz paid her medical benefits and closed her claim. In 2000, while employed by Hampton Lumber Company, Clevenger reopened her 1997 claim. The Department of Labor and Industries (L & I) ordered Cowlitz to pay her time loss compensation. But the superior court reversed because reasonable minds could not differ that Clevenger's 1997 injury had worsened while she worked at Hampton and the "last injurious exposure rule" applied rendering Hampton and not Cowlitz responsible for these benefits. Both Clevenger and L & I raise issues on appeal. We affirm.

FACTS
¶ 2 From 1995 through May 1999, Clevenger worked at Cowlitz, a self-insured employer.[1] On May 2, 1997, she injured her back and on July 2, Cowlitz paid her medical benefits and closed her claim.[2]
¶ 3 In November 1999, shortly after the lumber mill changed owners, Clevenger began working for Hampton, the new owner. From November 1999 through May 2000, she experienced pain and sensory problems radiating *518 down both legs.[3] As a result, on July 7, 2000, she applied to reopen her 1997 L & I claim. L & I denied the application. She requested reconsideration and on December 20, 2000, L & I reopened her claim effective May 30, 2000.[4]
¶ 4 On January 8, 2001, per L & I's order, Cowlitz paid Clevenger time loss benefits for July 5 through July 6, July 10 through July 16, and August 1 through August 14, 2000. Cowlitz did not appeal this order.
¶ 5 On April 5, 2001, L & I directed Cowlitz to pay Clevenger time loss compensation for the period January 16 through April 4, 2001. L & I also directed Cowlitz to address Clevenger's employability as determined by a vocational consultant. On April 25, 2001, Cowlitz filed a protest and requested reconsideration. L & I affirmed its order.
¶ 6 Cowlitz appealed L & I's order. Cowlitz also requested that Clevenger file a claim with Hampton because she developed increased low back problems while working at Hampton's mill. Clevenger declined to do so.
¶ 7 After a hearing on Cowlitz's appeal, an industrial appeals judge (IAJ) entered a proposed decision affirming L & I's order.[5] Cowlitz sought review before the Board of Industrial Appeals (Board), arguing that, under the last injurious exposure rule, the responsibility for Clevenger's condition should be shifted to Hampton. L & I did not respond to the petition.
¶ 8 The Board affirmed the IAJ's proposed order. Cowlitz appealed to the superior court. Cowlitz moved for summary judgment, arguing lack of material fact and application of the last injurious exposure rule. L & I did not participate in the proceeding.
¶ 9 The trial court granted Cowlitz's motion because (1) the last injurious exposure rule applied and, (2) based on the record, reasonable minds could not differ that Clevenger's Hampton employment proximately caused her worsened back condition.

ANALYSIS

Standard of Review
¶ 10 When reviewing an order for summary judgment, we engage in the same inquiry as the trial court. Mountain Park Homeowners Ass'n, Inc. v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994) (citing Syrovy v. Alpine Resources, Inc., 122 Wash.2d 544, 548-49 n. 3, 859 P.2d 51 (1993)). We affirm summary judgment if no genuine issue of any material fact exists, entitling the moving party to judgment as a matter of law. CR 56(c); Dep't of Labor & Indus. v. Fankhauser, 121 Wash.2d 304, 308, 849 P.2d 1209 (1993). We consider all facts and reasonable inferences in the light most favorable to the nonmoving party, and we review all questions of law de novo. Mountain Park, 125 Wash.2d at 341, 883 P.2d 1383.

The Last Injurious Exposure Rule[6]

The Rule's Applicability to an Industrial Injury Case
¶ 11 Clevenger and L & I contend that the last injurious exposure rule applies only to occupational disability claims, not to *519 industrial injury claims.[7] We disagree. We previously held to the contrary in Champion Int'l, Inc. v. Dep't of Labor & Indus., 50 Wash.App. 91, 746 P.2d 1244 (1987), where we applied the last injurious exposure rule in an industrial injury case.[8]
¶ 12 Clevenger cites Weyerhaeuser Co. v. Tri, 117 Wash.2d 128, 814 P.2d 629 (1991),[9] and argues that our Supreme Court declined to expand the rule's application from occupational disability to industrial injury cases. Again we disagree. The Tri court cited with approval our industrial injury holding in Champion:
The Court of Appeals has also adopted the last injurious exposure rule. In Champion, a worker suffered two on-the-job injuries. One occurred while the employer was state insured, and the other while the employer was self-insured. In holding the employer liable for the full cost of vocational retraining, the court rejected apportionment and applied the last injurious exposure rule.
Tri, 117 Wash.2d at 138-39, 814 P.2d 629 (citation omitted). Clevenger and L & I's argument fail.[10]

The Rule's Applicability to Self-Insured Employers
¶ 13 Clevenger contends that the last injurious exposure rule does not apply where the claims involve two self-insurers. Instead, according to Clevenger, the rule applies only when a determination must be made whether a claim should be paid under the state fund or by a self-insurer.
¶ 14 In Champion we held: "When an employee sustains a subsequent industrial injury ... the insurer at risk at the time of the second injury is liable." 50 Wash.App. at 93, 746 P.2d 1244 (emphasis added). Likewise, in Tri, our Supreme Court held: "The last injurious exposure rule ... arbitrarily assign[es] responsibility to the insurer at risk during the last exposure." 117 Wash.2d at 136, 814 P.2d 629 (emphasis added). Nothing in the language of these cases implies that the last injurious exposure rule is limited to the disputes between state insurance and self-insured employees. The term "insurer at risk," as used in both cases, means an insurer who employed the injured employee at the time of his or her injury. Clevenger's argument fails.

*520 The Rule's Applicability Where no "New" Injury Occurred
¶ 15 Clevenger and L & I further contend that the last injurious exposure rule applies only if an employee sustains a "new" injury while working for the last employer. L & I argues that, because Clevenger did not sustain a new injury while working at Hampton, the last injurious exposure rule does not apply.
¶ 16 In Champion, we applied the rule when a logger sustained two injuries: one to his back and one to his elbow. 50 Wash.App. at 92, 746 P.2d 1244. We held that the employer on the open second claim was responsible for paying the full cost of the vocational services provided to the worker, even though his disability resulted from both injuries. Champion, 50 Wash.App. at 93, 746 P.2d 1244.
¶ 17 In Tri, however, each employee sustained one occupational disabilityloss of hearing. 117 Wash.2d at 130, 814 P.2d 629. A portion of the disability occurred while the employees were insured by the state, and a portion developed when the employer became self-insured. Tri, 117 Wash.2d at 130, 814 P.2d 629. Our Supreme Court acknowledged that it would be difficult to assign proportionate responsibility to the state and to the employer and applied the last injurious exposure rule to arbitrarily assign responsibility to the last insurer at risk. Tri, 117 Wash.2d at 135-36, 814 P.2d 629.
¶ 18 The present case is more like Tri, although Champion provides insight. In 1997, while working at Cowlitz, Clevenger sustained a back injury, for which she received benefits. In 2000, while working at Hampton, she reopened her 1997 claim due to increased back pain. Thus, she did not sustain a "new" injury while working for Hampton.
¶ 19 Neither Champion nor Tri limit the applicability of the last injurious exposure rule to instances where an employee suffers a "new" injury. According to Tri, it is sufficient that the last exposure bears a "causal relationship" to an employee's condition. 117 Wash.2d at 136, 814 P.2d 629. As we discuss below, Clevenger's Hampton employment bore a similar causal relationship to her increased back pain. Accordingly, Clevenger's argument fails.

Clevenger's Hampton Employment
¶ 20 L & I contends that a genuine issue of material fact exists on whether Clevenger's Hampton employment contributed to her disability.[11] L & I asserts that while at Hampton, Clevenger did not perform strenuous work that contributed to her back injury. We disagree.
¶ 21 The evidence shows that Clevenger resumed her back treatments, reopened her claim, and ultimately stopped working after she began working for Hampton. Also, she testified that during her Hampton employment, her back pain increased substantially, and she experienced pain radiating down both legs. She stated that she worked as a sorter stacker operator, requiring her to stand on a metal floor while running the buttons and pedals of the stacking equipment. At the end of her shift, she also had to lift varying sizes of wet lumber that had fallen from a conveyor belt. And she testified that standing all day and bending over to pick up lumber caused her pain.[12]
¶ 22 Dr. Cooper also testified that Clevenger's Hampton employment aggravated her *521 back problems. He analyzed a sawmill stacker job description and determined she was incapable of performing the work: "I didn't feel she was capable of going on cat walks [sic] or conveyor, stairs, capable of using some of the tools they would require in a safe manner." Clerk's Papers at 263. And Cooper addressed stooping and forward bending as the types of activities that contributed to a degenerative back condition.
¶ 23 Similarly, Dr. Morris identified prolonged standing on hard floors as one type of activity that can worsen symptoms of an underlying degenerative condition. Both Cooper and Morris testified that Clevenger's condition likely worsened by her work at Hampton.[13] There being no evidence to the contrary submitted, the trial court properly ruled as a matter of law that Clevenger's Hampton employment contributed to her back problem.

Clevenger Filed No Claim Versus Hampton
¶ 24 Next, L & I contends that because Clevenger had not filed a claim against Hampton, the last injurious exposure rule would place an impossible burden on her to obtain benefits from Hampton, while at the same time precluding her from obtaining benefits from Cowlitz; as a result, she would be at risk of receiving no benefits. L & I cites Fankhauser, 121 Wash.2d 304, 849 P.2d 1209, arguing that when the undisputed evidence shows that the claimant's condition arose from employment covered under the Industrial Insurance Act (Act), the last injurious exposure rule cannot be used to deny benefits.
¶ 25 In Fankhauser, two claimants sought benefits for a disability resulting from multiple employment-related exposures to asbestos, some of which occurred when the workers became self-employed and had no workers' compensation coverage. 121 Wash.2d at 306-07, 849 P.2d 1209. Based on the last injurious exposure rule, L & I denied both claims because the periods of self-employment represented the claimants' last injurious exposure. Fankhauser, 121 Wash.2d at 307, 849 P.2d 1209.
¶ 26 Our Supreme Court held that the last injurious exposure rule did not bar the claimants from workers' compensation when they were injured in covered employment, although their last injurious exposure occurred during noncovered employment, and that the last covered employer or insurer, rather than the last employer in time, remained liable for the injury. Fankhauser, 121 Wash.2d at 315, 849 P.2d 1209. Thus the Fankhauser court allocated responsibility between the employer covered by the Act and employer not covered. In that instance, our Supreme Court held that the last insured employer should pay for the injury.[14]
¶ 27 Here, on the other hand, both Cowlitz and Hampton were self-insured employers required under the Industrial Insurance Act to provide mandatory workers' compensation coverage. See RCW 51.04.060; see also RCW 51.12.010, 51.12.020, 51.14.010. In applying the last injurious exposure rule, the superior court simply allocated responsibility between covered employment insurers.

Intervening Cause of a Disability
¶ 28 Citing McDougle v. Dep't of Labor & Indus., 64 Wash.2d 640, 393 P.2d 631 (1964), L & I and Clevenger argue that Cowlitz would be released from its duty to pay Clevenger *522 benefits only if it could show that her Hampton work comprised the intervening cause of her temporary and total disability.
¶ 29 In McDougle, the claimant aggravated his previous compensable back injury when he helped his brother-in-law unload sacks of grain. 64 Wash.2d at 641, 393 P.2d 631. Because the brother-in-law was not the claimant's employer, successive employment exposure was not an issue, precluding application of the last injurious exposure rule. McDougle, 64 Wash.2d at 641-42, 393 P.2d 631. Here, Clevenger had two successive employment exposures. McDougle does not apply.[15]

Trial Court Authority
¶ 30 Finally, Clevenger contends that the trial court exceeded the scope of judicial review accorded it under RCW 51.52.115 (trial court considers issues properly before the Board). She asserts that the Board affirmed only the order to pay temporary total disability benefits. Therefore, she argues, the trial court erred in reversing the Board and "mandat[ing] the Department [to] issue an order declaring the employer as not being liable for [her] low back condition." Appellant's Br. at 15. We disagree.
¶ 31 In determining that Clevenger was entitled to time loss benefits and that it was Cowlitz's responsibility, the trial also granted Cowlitz's motion for summary judgment. As we previously noted, the trial court properly ruled as a matter of law that Clevenger's employment at Hampton caused her low back condition. It then applied the law to these facts and properly applied the last injurious exposure rule. It did not err in doing so and Clevenger's argument fails.
¶ 32 Affirmed.
We concur: BRIDGEWATER, J., and QUINN-BRINTNALL, C.J.
NOTES
[1] For the purposes of the Industrial Insurance Act, a "`[s]elf-insurer' means an employer or group of employers which has been authorized under this title to carry its own liability to its employees covered by this title." RCW 51.08.173.
[2] In the meantime, on June 11, 1997, Clevenger began seeing Dr. Cooper, who diagnosed her with preexisting degenerative disk disease at L5-S1. Cooper placed no work restrictions on her. Between June and August 1997, Clevenger stopped seeing Cooper and continued working.
[3] In May 2000, Clevenger resumed seeing Cooper. On July 5, 2000, Cooper recommended that Clevenger stop working and referred her to a neurosurgeon, who diagnosed advanced degenerative disk disease and recommended surgery.
[4] In September 2000, at Cowlitz's request, Dr. Paudler examined Clevenger and concluded that she had an injury-related lumbar strain, worsened since her claim closure. Paudler also concluded that Clevenger had a preexisting degenerative disk disease at L5-S1 unrelated to the compensable injury.
[5] The IAJ also found that Clevenger, who had only a high school education, possessed no transferable skills qualifying her for sedentary employment or light level work within her physical restrictions.
[6] L & I first argues that the trial court erred in granting summary judgment because a genuine issue of material fact exists whether Clevenger was temporarily and totally disabled as a proximate result of her industrial injury. But Cowlitz does not dispute Clevenger's disability. The only issue before us is whether, under the last injurious exposure rule, Hampton, and not Cowlitz, should be responsible for Clevenger's disability costs.
[7] Clevenger and L & I also argue that Cowlitz's compliance with L & I's December 20, 2000 order precludes it from appealing L & I's order to pay Clevenger's benefits for January 16 through April 4, 2001. But L & I's December 20, 2000 order is not a part of the record; it is referenced in the Board's procedural findings. According to these findings, L & I's order merely reopened Clevenger's Cowlitz claim. The record does not support an argument that the condition that formed the basis for reopening her claim was the same condition on which the later award of disability benefits was predicated. Thus, we reject this argument.
[8] In Champion, James Buti, a logger, sustained two on-the-job injuries while employed by Champion. The first injury occurred while the state insured Champion's industrial insurance program, and the second injury occurred after the company became a self-insurer. Champion, 50 Wash.App. at 92, 746 P.2d 1244. As a result of these injuries, Buti could not work and required vocational retraining. Champion, 50 Wash.App. at 92, 746 P.2d 1244. Champion argued that because the earlier injury contributed to Buti's disability, his vocational retraining expense should be apportioned between the state's and Champion's funds. Champion, 50 Wash.App. at 92, 746 P.2d 1244. We disagreed and held that, under the last injurious exposure rule, Champion must pay Buti's retraining benefit as the last insurer at risk at the time of his last injury. Champion, 50 Wash.App. at 93, 746 P.2d 1244.
[9] In Tri, eight Weyerhaeuser employees suffered hearing loss resulting from occupational noise. 117 Wash.2d at 130, 814 P.2d 629. But in each case, a portion of the employee's hearing loss occurred while the state insured the workers and a portion occurred after the company became a self-insurer. Tri, 117 Wash.2d at 130, 814 P.2d 629. Weyerhaeuser argued, therefore, that the state should pay a proportionate share of the disability award. Tri, 117 Wash.2d at 130, 814 P.2d 629. Our Supreme Court disagreed and held that, according to the last injurious exposure rule, the insurer covering the risk during the most recent exposure bearing a causal relationship to the disability remains liable for the entire amount of the award. Tri, 117 Wash.2d at 139, 814 P.2d 629.
[10] L & I argues that the trial court did not have jurisdiction to decide whether Clevenger suffered an occupational disability because she submitted no occupational disability claim. But the trial court acknowledged that Clevenger suffered an industrial injury and ruled that the last injurious exposure rule applied to industrial injury cases. Thus, this argument also fails.
[11] Relying on Save-Way Drug, Inc. v. Standard Inv. Co., 5 Wash.App. 726, 727, 490 P.2d 1342 (1971), Cowlitz argues that L & I may not raise this issue for the first time on appeal. We disagree. In that case, at trial the defendant stipulated to the facts set out in two affidavits. But on appeal it raised the issue of sufficiency of the supporting affidavit, Division One declined to consider it on the grounds the defendant failed to raise it before the trial court. Save-Way, 5 Wash.App. at 727, 490 P.2d 1342. This holding does not apply here, where the main issue argued at both levels is whether Hampton or Cowlitz should compensate for Clevenger for her injury. On de novo review from summary judgment, we may affirm the trial court on alternate grounds. Piper v. Dep't of Labor & Indus., 120 Wash.App. 886, 890, 86 P.3d 1231 ("an appellate court may affirm a trial court on any theory supported by the pleadings and the record even if the trial court did not consider that theory") (citing LaMon v. Butler, 112 Wash.2d 193, 200-01, 770 P.2d 1027 (1989)), review denied, 152 Wash.2d 1032, 103 P.3d 201 (2004).
[12] Cooper explained: "Forward bending tends to put a lot more pressure on the disks for all of us. If there is already a problem with the disk, it will tend to exacerbate it causing the disk to protrude forward." Clerk's Papers at 253.
[13] On the other hand, the independent medical examiner opined that Clevenger's present back condition resulted solely from her degenerative disk disease. But in Champion, we held that if an industrial injury proximately causes a worker's disability, the worker deserves full compensation for the disability notwithstanding his or her pre-existing state of health. 50 Wash.App. at 93, 746 P.2d 1244 (citing Wendt v. Dep't of Labor & Indus., 18 Wash.App. 674, 682, 571 P.2d 229 (1977); Shea v. Dep't of Labor & Indus., 12 Wash.App. 410, 414, 529 P.2d 1131 (1974), review denied, 85 Wash.2d 1009 (1975); Fochtman v. Dep't of Labor & Indus., 7 Wash.App. 286, 291, 499 P.2d 255 (1972)). Thus, Clevenger's pre-existing degenerative disk disease does not preclude the application of the last injurious exposure rule if her employment at Hampton worsened her pre-existing back condition. The independent medical examiner did not say whether Clevenger's Hampton employment worsened her back condition. Thus, the testimony is irrelevant to this issue.
[14] The rule in Fankhauser does not contradict the rules in Champion or Tri: according to all three cases, the last insured employer is required to pay the costs of industrial injury or occupational disability.
[15] Moreover, as we discussed above, the last injurious exposure rule assigns full liability for an employee's injury to the last employer whose workplace conditions contributed to the causation of the employee's disability. Tri, 117 Wash.2d at 130, 814 P.2d 629. Neither the Tri court, nor we in Champion, held that the last injury must be an intervening cause of the claimed disability in order to apply the last injurious exposure rule. Instead, it is sufficient that Clevenger's Hampton work contributed to the cause of her disability.