2018 JUL 23 AM 9:01
COURT OF APPEALS DIV I

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| SOUTHWEST AIRLINES, | No. 77301-1-I |
| Respondent, | |
| v. | DIVISION ONE |
| KEVIN J. LUCHI, | UNPUBLISHED OPINION |
| Appellant. | FILED: July 23, 2018 |

LEACH, J. — Kevin Luchi appeals the trial court's reversal of the decision of the Board of Industrial Insurance Appeals (Board). The Board found that Luchi's 2011 industrial injury was a proximate cause of his later injury in 2014. Because our review of the record leaves this court with the definite and firm conviction that the trial court made a factual mistake about a proximate cause of Luchi's later injury, we reverse and remand.

## BACKGROUND

In February 2011, Luchi suffered injuries at the L4-5 and L5-S1 levels of his vertebrae while working for Southwest Airlines (SW). SW agrees that these injuries resulted in disc herniations at these levels. Luchi filed a workers' compensation claim. He had surgery to address these injuries and was later diagnosed with right leg radiculopathy due to scar tissue from this surgery. Luchi continued to experience pain in his lower back, pain and weakness in his right

lower extremity, and tripping and falling. In April 2014, as Luchi was entering the post office, his right foot slipped and he jarred his leg but did not fall. A subsequent MRI (magnetic resonance imaging) showed a disc herniation at the L3-4 level.

In March 2015, the Department of Labor and Industries affirmed its January 2015 order segregating Luchi's L3-4 disc herniation as unrelated to his February 2011 industrial injury. Luchi appealed to the Board. It reversed, holding that Luchi's industrial injury and its consequences were a proximate cause of his later injury. SW appealed to the King County Superior Court, which reversed the Board's decision and affirmed the Department of Labor and Industries' order. The trial court found, "Mr. Luchi's incident of April 15, 2014, was not proximately caused by his February 28, 2011, industrial injury, and his new right herniated disc at the L3-4 level was not proximately caused or aggravated by the industrial injury or its sequelae." Luchi appeals.

## STANDARD OF REVIEW

On review, the superior court accepts the Board's decision as prima facie correct and the burden of proof is on the challenger.[1] It reviews the Board's decision de novo and "may substitute its own findings and decision for the Board's if it finds from a 'fair preponderance of credible evidence' that the Board's findings and decision were incorrect."[2]

---

[1] Dep't of Labor & Indus. v. Shirley, 171 Wn. App. 870, 878, 288 P.3d 390 (2012).
[2] Shirley, 171 Wn. App. at 878 (quoting Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1, 5, 977 P.2d 570 (1999)).

We use the clearly erroneous standard to review the trial court's findings of fact.[3] "A finding of fact is clearly erroneous when, although there is some evidence to support it, review of all of the evidence leads to a 'definite and firm conviction that a mistake has been committed.'"[4] An appellate court reviews de novo whether the trial court's findings support the challenged conclusions of law.[5] We base our review on the evidence presented to the Board.[6]

## ANALYSIS

Luchi makes two claims. First, he claims that insufficient evidence supports that his slip, and not his industrial injury or its consequences, caused his L3-4 disc herniation. We reject this claim because SW's expert medical testimony provides substantial evidence supporting the trial court's finding that his slip caused his new disc herniation.

Second, he claims that his right leg radiculopathy resulting from his industrial injury caused him to slip and jar his leg at the post office. We agree. Luchi's treatment providers opined that the consequences of Luchi's industrial injury caused him to slip and jar his leg; SW's experts did not address at all whether the radiculopathy caused weakness that in turn caused Luchi to slip and herniate his L3-4 disc. SW claims that it is equally plausible that Luchi slipped because of

---

[3] See Schryvers v. Coulee Cmty. Hosp., 138 Wn. App. 648, 654, 158 P.3d 113 (2007); see also Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000).

[4] Schryvers, 138 Wn. App. at 654 (quoting Wenatchee Sportsmen Ass'n, 141 Wn.2d at 176).

[5] Shirley, 171 Wn. App. at 878.

[6] Shirley, 171 Wn. App. at 878.

a puddle of water or a banana peel on the floor. But the record contains no evidence to support either of these theories. The only evidence of the cause of his slip is his history of medical problems resulting from his industrial injury. We thus conclude that the trial court made a clear mistake because it did not address this uncontroverted evidence.

As a preliminary matter, Luchi asserts that in reviewing his claims, this court should resolve any doubts in his favor because the Industrial Insurance Act (Act)[7] "'is to be liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker.'"[8] But the principle of liberal construction applies only to matters concerning the construction of the statute, not to questions of fact.[9] Here, the principle does not apply because Luchi does not challenge the trial court's interpretation of the Act; he challenges only the court's proximate cause determination.

As discussed below, proximate cause includes cause in fact and legal causation.[10] There may be more than one proximate cause of a condition for a worker to recover benefits under the Act.[11] Although the industrial injury must be

---

[7] Title 51 RCW. The Act is a time-loss compensation scheme for workers who experience industrial (work-related) injuries. Shirley, 171 Wn. App. at 879.

[8] Shirley, 171 Wn. App. at 880 (quoting Dennis v. Dep't of Labor & Indus., 109 Wn.2d 467, 470, 745 P.2d 1295 (1987)).

[9] Ehman v. Dep't of Labor & Indus., 33 Wn.2d 584, 595, 206 P.2d 787 (1949).

[10] Baughn v. Honda Motor Co., 107 Wn.2d 127, 142, 727 P.2d 655 (1986).

[11] Shirley, 171 Wn. App. at 880.

a proximate cause of the alleged condition for which the worker seeks benefits, the law does not require that the industrial injury be the sole proximate cause.[12] But "[i]t must be made to appear that the injury probably caused the disability."[13] Testimony of medical experts must establish the probability of a causal connection between the industrial injury and the subsequent physical condition.[14]

## Cause In Fact

Luchi claims that but for his industrial injury and its consequences, he would not have injured the L3-4 level of his vertebrae or slipped. We agree that but for his industrial injury and its consequences, he would not have slipped.

Cause in fact is the "but for" consequences of an act. This means that but for the act, the later events resulting in a direct, unbroken sequence would not have occurred.[15] The "but for" cause of injury is typically a question of fact for the trier of fact.[16]

Luchi primarily contends that expert medical testimony establishes that his surgery, vocational retraining activities, and activities of daily living caused his L3-4 disc herniation independent of his slip at the post office. By contrast, SW claims that objective medical evidence and expert medical testimony support that Luchi's

---

[12] Shirley, 171 Wn. App. at 880.

[13] Jackson v. Dep't of Labor & Indus., 54 Wn.2d 643, 649, 343 P.2d 1033 (1959) (quoting Stampas v. Dep't of Labor & Indus., 38 Wn.2d 48, 51, 227 P.2d. 739 (1951)).

[14] Jackson, 54 Wn.2d at 648.

[15] Jenkins v. Weyerhaeuser Co., 143 Wn. App. 246, 254, 177 P.3d 180 (2008).

[16] Indoor Billboard/Wash., Inc., v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 83, 170 P.3d 10 (2007).

slip alone caused his L3-4 disc herniation. We agree with SW that substantial evidence supports the trial court's finding that Luchi did not herniate his L3-4 disc independent of his slip.

But uncontroverted evidence supports Luchi's claim that his radiculopathy caused him to slip, and no evidence supports another explanation. All the experts for both parties agree that this medical condition resulted from his industrial injury. So we are confident that the trial court made a mistake in finding that the consequences of his industrial injury were not a cause of his slip. We discuss each of these points in turn.

In August 2011, Luchi had a microdiscectomy at levels L4-5 and L5-S1. Luchi testified that after his surgery, his low back remained symptomatic, with pain radiating down the right side of his buttocks and down his calf to the outside of his foot. He received physical therapy and continuing chiropractic care. In January 2013, he started a vocational retraining program for medical assisting. Physician Assistant-Certified Brian Hiller, who treated Luchi consistently since 2009, testified about Luchi's complications from his surgery, including inflammation, pain, and scar tissue buildup. Hiller also stated that Luchi's vocational retraining activities caused him daily lower back and right leg pain because it required him to stand and sit for long periods of time.

Similarly, Dr. Richard Wohns, a board-certified neurosurgeon, who testified on Luchi's behalf, stated that practicing CPR (cardiopulmonary resuscitation) and

bending over lab tables to practice stitches and other procedures could have aggravated Luchi's lower back condition.

In addition, Hiller stated that simple activities like sitting or sleeping caused Luchi aggravations on a regular basis. Wohns agreed that activities of daily living for someone with Luchi's history could cause his condition to worsen. In May 2013, Luchi went to the emergency room after bending over to talk to his son and feeling a sharp pain in his right lower back. Wohns stated that this could have caused worsening or aggravation of his lower back condition. Although Luchi told Hiller that his pain worsened after he slipped at the post office, in March 2014, one month before the incident, Luchi also reported that he was experiencing worsening back pain. Both Hiller and Wohns testified that Luchi's vocational activities and activities of daily living, not his slip, could have caused the L3-4 disc herniation on a more-probable-than-not basis.

By contrast, Dr. Patrick Bays, a board-certified orthopedic surgeon who testified for SW, stated that on a more-probable-than-not basis Luchi's industrial injury or its consequences did not cause the L3-4 herniation for two reasons. First, he stated that the most important evidence was the objective evidence consisting of four MRI studies. Luchi had three MRIs in 2011, one before his surgery and two after. All showed a normal L3-4 disc. Not until June 2014, two months after Luchi slipped at the post office, when Luchi had a fourth MRI, did any study show a disc herniation at the L3-4 level. Although Luchi asserts that this objective medical evidence has little probative value because his last MRI before he slipped was

three years earlier, Bays stated that slipping, grabbing a railing at the door, and twisting like Luchi did at the post office is sufficient to herniate a disc.

Second, Bays explained that to his knowledge there are "no evidence-based medicine studies that support an increased incidence of pathology, or the predisposition to pathology [at the L3-4 level], as a consequence of having a one-sided microdis[c]ectomy at the lower two levels, [namely, the L4-3 and L5-S1 levels]."

Dr. David Bauer, a board-certified orthopedic surgeon with a specialty in spinal injuries and diseases who also testified for SW, similarly concluded that slipping and twisting like Luchi did at the post office could create a disc herniation. Bauer explained that the medical literature shows that discectomy like Luchi's does not change the anatomy of the spine enough to weaken an adjacent level like the L3-4 level.

Bauer also reviewed Luchi's chiropractic records as part of his evaluation of Luchi's claim for SW in May 2015. He stated that Luchi first had increased symptoms in his back and wrapping around into his thigh and groin after he slipped. These symptoms were consistent with a herniation at the L3-4 level because the L3 nerve root gives sensation to the anterior thigh and groin. And he explained that the pain Luchi experienced from sitting in class or from driving is common in people who have degenerative changes in their backs and "is a condition that we all deal with." Bays' and Bauer's testimony provide substantial evidence

supporting the trial court finding that Luchi did not herniate his L3-4 disc independent of his slip at the post office.

Although Bauer and Bays each testified about how the slip caused the L3-4 herniation, they did not discuss whether the consequences of Luchi's industrial injury caused him to slip. Their testimony provides no evidence to answer this question. They agree that his industrial injury caused issues with his right lower leg, but they do not address at all Luchi's claim that these problems caused him to slip. Consistent with the Board's well-reasoned decision,[17] we conclude that substantial evidence supports only one finding, that but for Luchi's radiculopathy caused by his industrial injury, he would not have slipped and consequently herniated his L3-4 disc.

Hiller defined "radiculitis" as "a pain and inflammation of a nerve root when there is pressure on the nerve root. It gives pain from the spine down the dermatome or area. For Mr. Luchi it's down his right leg." While a 2011 electrodiagnostic test of Luchi's lower leg did not show evidence of radiculopathy, Hiller, Wohns, and Bays diagnosed Luchi with right-sided radiculopathy as a result of his industrial injury. SW relies on the results of the electrodiagnostic testing to support its position, but it does not dispute Hiller's, Wohns', or Bays' diagnosis.

Hiller testified about the symptoms Luchi experiences as a result of radiculopathy. He stated that Luchi fell repeatedly in 2014 because he "was having

---

[17] In re Luchi, No. 15 15166, at 4 (Wash. Bd. of Indus. Ins. Appeals Aug. 29, 2016).

weakness to the right lower extremity with his radiculitis and with that he was tripping over objects and having weakness and a giving-out sensation with his leg causing him to fall." Similarly, Wohns stated that Luchi "had back pain, right leg pain, numbness and tingling; right buttock, posterior upper leg, and foot. Could not sit. Some weakness in the right leg." Luchi testified that he falls on a regular basis and sometimes falls down and up steps because he has difficulty determining where the step is in relation to his foot. In addition, he sometimes experiences numbness radiating down into his right leg causing his foot to drag and has numbness in the outer part of his right foot around his outer small toes. His wife, Erin Luchi, testified that she has seen him fall a number of times because he trips on steps when he walks and even stubs his foot when walking on flat ground.

Luchi's slip at the post office is consistent with the symptoms he experiences as a result of his right-sided radiculopathy. Hiller described Luchi's fall in a chart note and reported that although Luchi did not actually fall, he "slipped, and extended his leg on the right, while falling towards his buttock." SW asserts that because Hiller did not indicate that Luchi slipped as a result of lower extremity numbness or pain or back pain, the record does not show that Luchi slipped as a result of his radiculopathy. SW claims that it is equally plausible that he slipped because of a puddle of water or a banana peel on the floor.

But uncontroverted evidence in the record supports Luchi's claim that he slipped, as he had many times after his industrial injury, because of his radiculopathy. The record contains no evidence of a puddle of water, a banana,

or any other alternative explanation. This includes any claim that he slipped because of an object on the floor, a feature of the building, or a medical condition other than radiculopathy. Because the only evidence about the cause of his slip is his radiculopathy, we are convinced that the trial court made a mistake in finding that the consequences of Luchi's industrial injury were not a proximate cause of his slip.

### Legal Causation

Relatedly, Luchi asserts that his slip was not an intervening act that served as a superseding cause and broke the chain of causation between his industrial injury and L3-4 disc herniation. We agree.

Legal causation involves policy considerations about how far the consequences of an event should extend.[18] "Aggravation of the claimant's condition caused by the ordinary incidents of living—by work which he could be expected to do; by sports or activities in which he could be expected to participate—is compensable because it is attributable to the condition caused by the original injury."[19] But there is no legal causation when the "connection between the ultimate result and the [original event] is too remote or insubstantial to impose liability."[20] For example, the act is too remote when an intervening act is a

---

[18] Baughn, 107 Wn.2d at 146.
[19] McDougle v. Dep't of Labor & Indus., 64 Wn.2d 640, 644, 393 P.2d 631 (1964).
[20] Schooley v. Pinch's Deli Mkt., Inc., 134 Wn.2d 468, 478-79, 951 P.2d 749 (1998).

superseding cause that breaks the chain of causation.[21] "To be a superseding cause, an intervening act must be one that is not reasonably foreseeable."[22] Legal causation is a question of law for the court.[23]

SW relies on In re Swindell.[24] There, a year after an industrial injury causing a herniated disc, the claimant was walking on a rotted log while hunting when it crumbled under his feet and he fell, worsening his injury.[25] The Board found that falling through a rotted log was a new injury unrelated to his industrial injury:

> Hunting, which we assume would normally consist of walking while carrying a gun was not an unreasonable activity for this claimant under the circumstances. However, the aggravation of the claimant's condition following the October 15, 1978 incident was not the direct result of the hunting "activity", but rather an accident while hunting. It was the result of a new and independent traumatic occurrence, an accident of falling through a rotted log which acted upon his previously weakened condition to create a disabling new dimension to the claimant's low back problems.[26]

We distinguish these facts from Luchi's circumstances. Swindell fell while participating in what the Board found to be a reasonable activity based on his physical restrictions caused by his industrial injury. Similarly, Luchi slipped while walking, which was within the scope of his permissible activities.[27] But Swindell's

---

[21] Shirley, 171 Wn. App. at 886-87, 895 (Grosse, J., dissenting).

[22] Shirley, 171 Wn. App. at 895 (Grosse, J., dissenting).

[23] Tae Kim v. Budget Rent A Car Sys., Inc., 143 Wn.2d 190, 204, 15 P.3d 1283 (2001).

[24] Nos. 53,792 and 58,864, 1980 WL 309455 (Wash. Bd. of Indus. Ins. Appeals May 8, 1980).

[25] Swindell, 1980 WL 309455, at *2.

[26] Swindell, 1980 WL 309455, at *3.

[27] In November 2011, Luchi had a physical capacities evaluation that reported he could not go back to work at his job of injury and was restricted in his overall ability to work. His restrictions included lifting no more than 50 pounds on

industrial injury or its consequences did not cause him to fall through the rotted log. The rotted log was a condition of Swindell's environment that caused an accidental fall independent of his industrial injury. By contrast, as discussed above, the record supports only one explanation for Luchi's slip; the alternative explanations offered by SW are speculation not supported by any evidence. Because the radiculopathy caused by Luchi's industrial injury caused the slip, the slip was not an intervening act that served as a superseding cause but was instead reasonably foreseeable.

## CONCLUSION

Our review of all the evidence leaves us convinced that the trial court committed a mistake in finding that the consequences of Luchi's industrial injury were not a proximate cause of his slip, resulting in the herniation of his L3-4 disc. We reverse and remand.

_Leach, J._

WE CONCUR:

_Andrus, J._          _Schindler, J._

---

an occasional basis, no repetitive bending on more than an occasional basis, and sitting for no more than 30 minutes at a time for a total of 2 hours per day.