[No. 200-3.   Division Three.   December 17, 1971.]

CLINTON G. AUSTIN, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

*Otto M. Allison, Jr.* (of *Fredrickson, Maxey, Bell & Allison*), for appellant.

*Slade Gorton, Attorney General,* and *Michael E. Donohue, Assistant,* for respondent.

GREEN, J.—On December 2, 1966, claimant, Clinton G.

Austin, an employee of Ralston Purina Co., suffered an injury to his back while lifting sacks of calcium phosphate. He submitted a claim to the Department of Labor and Industries, which was closed on September 29, 1967 with an award for permanent partial disability of 5 per cent of the maximum allowable for unspecified disability. The Board of Industrial Insurance Appeals affirmed the department action. The board's ruling was affirmed by a Spokane County jury. From this verdict, claimant appeals.

The only error assigned on appeal is the trial court's refusal to give the following requested instruction:

If you find that the plaintiff's industrial injury herein aggravated and made active a latent or dormant pre-existing condition, under the law, the resulting disability is to be attributed to the injury and not to the pre-existing physical condition, and the plaintiff is entitled to recover for the entire condition.

Claimant contends this instruction properly states the law established in *Miller v. Department of Labor & Indus.*, 200 Wash. 674, 682, 94 P.2d 764 (1939), where it is stated:

We have held in an unbroken line of decisions that, if an injury, within the statutory meaning, lights up or makes active a latent or quiescent infirmity or weakened physical condition occasioned by disease, then the resulting disability is to be attributed to the injury, and not to the preexisting physical condition.

It is claimant's theory the injury of December 2, 1966 made active or "lighted up" a latent or dormant preexisting condition; as a consequence, the *Miller* rule applies and the instruction should have been given. He contends that when the instruction was refused, the jury was not permitted, under the instructions given, to consider claimant's theory. As a result, it erroneously arrived at a negative answer to the following interrogatory:

Was the Board of Industrial Insurance Appeals correct in determining that on or about September 29, 1967, the condition proximately caused by plaintiff's industrial injury of December 2, 1966, was fixed and that further medical treatment would not tend to lessen plaintiff's causally related disability?

It is clear no instruction was given on claimant's theory. ■ ■ Each party is entitled to have his theory of the case presented to the jury by proper instruction, if there is any evidence to support it. *DeKoning v. Williams*, 47 Wn.2d 139, 141, 286 P.2d 694 (1955). A claimant must produce sufficient substantial facts, as distinguished from a mere scintilla of evidence to make a case for the trier of fact. *Sayler v. Department of Labor & Indus.*, 69 Wn.2d 893, 896, 421 P.2d 362 (1966); *Miller v. Department of Labor & Indus.*, 1 Wn. App. 473, 478, 462 P.2d 558 (1969). The only question before this court is whether there is sufficient evidence to present to a jury the theory that claimant's injury made active or "lighted up" a latent preexisting condition. It is our view there is not.

The evidence shows claimant's condition following the injury was diagnosed as ankylosing spondylitis, sometimes referred to as rheumatoid arthritis of the spine or "Marie Strumpell's arthritis." It is clear this condition preexisted the injury; the company doctor traced the condition on X rays for 10 years prior to the injury.

In his brief, claimant contends the condition was latent because he had no back trouble prior to the injury and was able to carry on his work lifting 100-pound bags of calcium phosphate. Since the injury he has not been able to do so. While the claimant did so testify on direct examination, he admitted on cross-examination that for a number of years before the accident he had occasional stiffness in his back and muscles; that he lost 1 or 2 days' work on an earlier occasion; and a couple of days in bed at home would straighten him out.[1] Moreover, the production

---

[1] "Q Now, I am wondering if I had your answer right to Mr. Allison's question. You said prior to this particular injury you never had any back pains or back fatigue at all? A I had stiffness and everything, but not the trouble that I have now. Q Did you have this very often, or just occasionally? A Just occasionally. Sort of fatigue or soreness. Everybody gets a stiff back once in awhile. Q Was this over a number of years? A It was over a number of years; yes, sir. Q Had you had any stiffness or soreness in the back say a few months prior to this, four or five months prior to the injury in December of 1966? A Not that I can recall. Q But you did occasionally have some stiffness? A Yes. Q In what part of your back did you have the stiffness? A Every

manager of Ralston Purina noted that before the accident claimant's gait was very stiff; he did not have a normal walk and it was unnatural for claimant to move or stand in a straight position.[2]

Claimant relies upon Dr. Robert Burroughs who first examined him in March 1968, 16 months after the injury, and stated:

It is my opinion that it is more likely than not that, that particular injury triggered off a sustained exacerbation of his chronic preexisting ankylosing spondylitis.

This testimony does not state the preexisting condition was latent or inactive. Moreover, it was elicited based on a history in which claimant denied any back aches, pains or stiffness, prior to the injury.[3] However, on cross-examina-

---

bone in my body from that work out there. It was heavy work. Q You did have stiffness in the back off and on prior to this particular date? A Yes. . . . Q Before your injury you stated you did have stiffness in lifting all this weight? A Yes. Q Did you have relatively the same type of stiffness in the joints you have now, but not as severe? A Sometimes you would work ten or twelve hours as the regular crew wouldn't want to stay over and me and another fellow finished it up, and it was just a good old stiff back. Q And in the joints of your hands and fingers? A Yes. Q More muscle ache than joint ache? A More muscle ache than anything. . . . Q You say that you lost one or two days with a stiff back? A I couldn't pinpoint the time. It has been so long back I can't recall. Q You indicated that you went to a doctor? A The company doctor, Dr. Reid. Q You say you would spend a couple of days at home in bed and then you would straighten out? A Yes."

[2]"A He did have a walk very different from the walk of other people. His gait was very stiff and it was noticeable that he did not have a normal walk. Also, his job was a lift truck driver which involves handling bags in addition to driving a lift truck and it was noticeable when getting off of the lift truck that there was a stiffness and difficulty or unnatural—it was unnatural for him to move or stand in a straight position."

[3]In *Sayler v. Department of Labor & Indus.*, *supra*, the court said, at page 896:

If the doctor has not been advised of a vital element bearing upon causal relationship, his conclusion or opinion does not have sufficient probative value to support an award.

tion when Dr. Burroughs[4] was asked to assume there were complaints of aches, pains and stiffness in his back and joints prior to the injury, he testified this would indicate the condition was symptomatic prior to the injury. He also testified it is unusual not to have symptoms. Further, he said the condition was a naturally progressing condition and would have progressed naturally without the injury. This testimony negatives the conclusion claimant's preexisting condition was latent or dormant before the injury.

Claimant also cites the testimony of Dr. William Grieve who examined claimant in August 1967 and testified for the respondent. On direct examination, he said that ankylosing arthritis develops without trauma and is naturally progressive independent of intervening events. It was his opinion claimant's condition was fixed and any further treatment would be for the arthritis and not for the injury. Claimant relies upon that portion of his testimony on cross-examination wherein Dr. Grieve said the arthritic condition existed prior to the injury; the injury aggravated it and caused the condition to become symptomatic but temporary. However, he also said the symptoms from the strain

---

[4] "Q Assuming the Claimant had some complaints of stiffness in his joints and initial stiffness when standing up or walking around or working hard, would this indicate some of the signs of ankylosing arthritis? A Those symptoms would be a suspected factor for this. I am certain if it was looked for several years or possibly quite a number of years before the accident it would have been found. Q Assuming those facts, and what he had before, would you say it was non–symptomatic prior to this injury? A I think that this is unusual. This is really quite unusual, but every once in awhile a patient comes in for another condition and on X ray they have a fairly advanced ankylosing spondylitis. Q Assuming he complains of stiffness and pains in getting up and getting around primarily in the joints, and stiffness from hard work or muscle strain; assuming they are there and this condition pre-existed the injury as you stated, would you say the condition was symptomatic prior to the time of the injury? A Yes, assuming that. . . . Q Did they indicate had there not been an injury would the condition progress on a natural progressing rate without any effect from the injury? A It is my opinion that the condition had been progressing and would have continued to progress naturally, Yes. Q Even if he hadn't had the injury it might have progressed to where you saw him in your examination? A True."

were past and in his opinion the claimant's present symptoms were due to the underlying preexisting condition unrelated to the injury. From our review of the testimony, it is evident Dr. Grieve did not testify the preexisting condition was inactive before the injury nor that the injury "lighted up" a latent condition.

In our view, the evidence was insufficient to justify the giving of a "lighting up" instruction and it was properly refused. Cf. *Hutchings v. Department of Labor & Indus.*, 24 Wn.2d 711, 725, 167 P.2d 444 (1946); *Rambeau v. Department of Labor & Indus.*, 24 Wn.2d 44, 163 P.2d 133 (1945); *Sayler v. Department of Labor & Indus., supra.*

Judgment affirmed.

MUNSON, C.J., and EVANS, J., concur.