# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| THOMAS A. LUNSCHEN, | No. 47483-2-II |
| Appellant, | |
| v. | |
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | UNPUBLISHED OPINION |
| Respondent. | |

MELNICK, J. — Thomas Lunschen appeals from a jury verdict affirming the Department of Labor and Industries' (L&I) denial of his request to reopen an industrial injury insurance claim due to aggravation.[1] Because substantial evidence supports the jury's verdict, and the superior court did not abuse its discretion by declining to give Lunschen's proposed jury instructions, we affirm the superior court.[2]

---

[1] L&I denied the claim. The Board of Industrial Appeals (the Board) affirmed the denial and entered findings of fact. Lunschen appealed to the superior court where a jury affirmed the denial.

[2] In Lunschen's notice of appeal and assignments of error, he appeals the Board's findings of fact and conclusions of law, the superior court's judgment, the superior court's order denying summary judgment, and all adverse rulings of the superior court during the trial. Some of these are not appealable. We do not review the Board's findings of fact and conclusions of law directly, but instead, review whether the verdict at the superior court was supported by substantial evidence. *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 180, 210 P.3d 355 (2009). Furthermore, we do not review the order denying summary judgment. An order denying summary judgment, based on a determination that material facts were in dispute, cannot be appealed following a trial. *Kaplan v. Nw. Mut. Life Ins. Co.*, 115 Wn. App. 791, 799, 65 P.3d 16 (2003).

FACTS

I.      TRIAL[3]

        A.      Factual Background

Lunschen has worked in construction for most of his life doing framing, siding, sheetrocking, and foundation work.  In 1989, Lunschen injured his mid to lower back and missed work for almost seven months.  When L&I benefits ended, he returned to work and resumed the same labor intensive work.

In 2005, Lunschen was doing foundation work for RFK Construction.  On January 17, he was shoveling concrete out of a Bobcat bucket and he injured his back.  The next day he was unable to work.  He experienced pain through his lower back and numbness in his left leg down to his foot.  Lunschen was unable to work for nine weeks.  He filed a claim with L&I and the claim was granted.  During that time, he saw a chiropractor, Dr. Vernon Kaczmarski, and participated in some physical therapy treatment.

After the nine weeks, Lunschen went back to the same job and worked for another three years until he was laid off in 2008 because of the economy.  His L&I claim was closed on June 9,

---

Here, Lunschen moved for summary judgment arguing that summary judgment was proper because there was no genuine dispute of material fact and "the Plaintiff's industrial related condition(s) objectively worsened or became aggravated between June 9, 2005 and January 4, 2013 as a matter of law."  Clerk's Papers (CP) at 285.  In response, L&I argued there was sufficient evidence from which a reasonable juror could find Lunschen's condition did not objectively worsen.  The court denied summary judgment because it determined there were genuine disputes of material fact as to Lunschen's condition, and Lunschen proceeded to trial on the same issue without first appealing.

[3] The testimony is from the hearing before the Board.  When Lunschen appealed the denial of his claim to the Superior Court, a jury heard the same evidence as the Board.

2005[4] when he went back to work. The claim did not include a permanent partial disability award. Lunschen testified that when he went back to work his back was a little better but, "A back injury is something that just . . . doesn't really just go away unless you have—I never wanted surgery or anything like that. . . . So I kind of just man up and took it and ate a lot of [A]sprins and [I]buprofen." Clerk's Papers (CP) at 109. He stated that he did not experience subsequent injuries after 2005 until 2012.

In May 2012, Lunschen was working in his home garden using a "claw" tool and felt his back "slip out." CP at 102. He could not get out of bed the next day. He experienced "tightness," he could not bend down, and he felt pain in his feet. CP at 102. He went back to Dr. Kaczmarski, but he did not have medical insurance. Due to the pain he could not go to the second floor of his house to sleep, and he slept on the floor because it was more comfortable.

In June 2012, Lunschen applied to reopen his 2005 L&I claim. On the application he indicated by checking "yes" in box 17 that the injury was a result of a "new incident or injury." CP at 121. Lunschen testified that he did not understand the question and that he was informed by L&I that his response was the reason they denied his request to reopen his claim. He later submitted a declaration to L&I through his attorney that stated, "Unfortunately, I accidentally checked 'Yes' in the box on Question 17. However, I have not had any new injuries or illnesses since my claim closed." CP at 122. It further stated, "[M]y previous low back and left leg industrial injuries have naturally and progressively worsened over time, and I am now in need of further treatment." CP at 123.

---

[4] This is the first "terminal date." The "terminal dates" establish the time period between which a claimant must show aggravation. *See Eastwood v. Dep't of Labor & Indus.*, 152 Wn. App. 652, 657-58 n.1, 219 P.3d 711 (2009).

In July, the pain was so severe that Lunschen's wife called an ambulance which took Lunschen to the hospital. When the Board of Industrial Insurance Appeals (Board) heard the case, Lunschen continued to feel numbness in his left leg, down to his foot. He stated that he continued to experience pain but did not have insurance, so he used Advil and Aspirin. Lunschen could lift enough weight to take out the trash but he could not do the activities he formerly did, like mowing the lawn, cleaning gutters, and fishing. He believed the injury in 2012 was a result of the injury in 2005 because he suffered from the same kind of symptoms.

B.      Expert Testimony

Dr. H. Richard Johnson, a licensed orthopedic surgeon, examined Lunschen and testified before the Board. He stated that Lunschen reported, "Low back pain, radiating into the lower extremities, with numbness and tingling in the left lateral and posterior thigh and calf," as well as, "low back pain that would radiate proximally to the base of the skull, associated with neck pain and stiffness." CP at 132-33. Dr. Johnson reviewed Lunschen's medical records and noted that a 2005 x-ray of Lunschen's back showed "evidence of diffuse degenerative changes in the lumbar spine."[5] CP at 135.

---

[5] According to Dr. Johnson, "degenerative disc disease" is,

> [A] process in which the disc desiccates. In other words, there is loss of height of that disc because it dries out
>      And when it dries out, it settles. And when it settles, it creates bulging at the edges, because what is being held tight by the water content of the disc, once that water content begins to be lost, then the disc settles. And when it settles, then you get bulging around the perimeter of the disc, of the outside of the disc.
>      And with that comes abnormal motion, and abnormal motion results in the development of bone spurs, called traction osteophytes. In other words, the abnormal motion creates spur formation.

CP at 161.

Dr. Johnson's review of the records showed Lunschen's pain did not subside from chiropractic treatment. Lunschen underwent an MRI and was referred to an orthopedic surgeon. Dr. Johnson stated that by comparing the 2005 and 2012 x-rays one could find "degenerative changes." CP at 140. However, Dr. Johnson was not provided with the x-rays themselves to review. He was merely referencing diagnostic studies and reports interpreted by another provider. According to Dr. Johnson, the changes were not the result of someone aging, which appear in a "symmetrical" pattern. CP at 141. They were consistent with previous trauma and showed as "asymmetrical." CP at 141. Dr. Johnson also commented on and disagreed with the conclusions of an independent medical exam (IME) ordered by L&I.[6] According to Dr. Johnson, in that exam the finding was that Lunschen's back worsened, but not as a result of the 2005 injury.

Dr. Johnson ultimately provided the opinion that

[w]ith regards to the industrial injury of January 17, 2005, the records and detailed physical findings are consistent with the fact that the patient did sustain a lumbar strain/sprain injury; that there also was aggravation or lighting up of preexisting diffuse lumbar spondylosis, or diffuse degenerative changes in the lumbar spine; that also there was evidence of annular tears of the annulus fibrosis at L4-L5 and L5-S1 levels; and also the patient had findings consistent with left lumbar radiculopathy.

---

[6] According to one expert witness, an IME is, "[A]n exam done primarily for the purposes of answering specific questions regarding causality, need for further treatment, or permanent impairment, and usually it's done in conjunction with another provider, such as a chiropractor or orthopedic surgeon, and is not done in the aspect of treating the individual or making any other treatment recommendations." CP at 224-25. According to another expert witness the IME "is arranged by [L&I] or a lawyer or a judge asking for independent opinion concerning an injury and a medical condition that somebody is suffering from." CP at 253. He stated that the person conducting the exam is "provided medical records. The examination is about an hour in length. A chart review is done as part of that, usually before the hour begins. The Claimant is examined that day. And then questions are answered by the doctors who were doing the evaluation." CP at 253

Following closure of his claim, he continued to experience episodic recurrent low back pain. But then there was the recent recurrence of left lumbar radiculopathy, as well as evidence of objective progression of the lumbar spondylosis, the degenerative changes in the lumbar spine that are of an asymmetric nature, the type seen posttraumatically rather than the type seen with the aging process.

CP at 155-56.

Dr. Johnson also stated that in his opinion, there was evidence Lunschen's condition "objectively worsened" between the 2005 injury and January 2013. CP at 156.

During cross-examination, Dr. Johnson explained the 2012 incident was more related to the 2005 injury than to the 1989 injury. He relied on the difference in degenerative progression between the x-rays but also admitted he did not review any records from the 1989 injury.

Dr. Kaczmarski also testified before the Board. He began treating Lunschen in 2005 after the back injury. Dr. Kaczmarski first diagnosed Lunschen with a lumbar strain, and recommended a course of treatment that returned Lunschen to work. However, when Lunschen's condition worsened, Dr. Kaczmarski recommended a new course of treatment. At the time, Dr. Kaczmarski reviewed an MRI that showed "degenerative changes throughout the spine, specifically L1 through L3." CP at 189. The findings from the MRI were that Lunschen "had annular tearing at L4-L5 and at L5-S1 [discs] with protrusion. But the one at the L5-S1 was more prominent on the left." CP at 189. Before the Board, Dr. Kaczmarski stated that he was not aware Lunschen had prior industrial injuries but "wouldn't be surprised" to hear it. CP at 208. On May 7, 2005, Dr. Kaczmarski released Lunschen back to work with no restrictions.

Dr. Kaczmarski saw Lunschen again after the 2012 injury. Lunschen reported "similar kind[s] of complaints of low back pain." CP at 193. Dr. Kaczmarski remarked that the x-rays from 2005 and the most recent injury were similar. He saw Lunschen approximately 27 times during the four months after the 2005 injury and 42 times after the 2012 injury. He was unaware

if Lunschen had experienced intensifying back pain prior to the 2012 injury. Dr. Kaczmarski opined that if Lunschen had not injured himself on May 29, 2012, he would not have needed care.

Dr. Kaczmarski disagreed with the finding of the IME that Lunschen's condition related to arthritis in his back. He stated that "[o]n a more-probable-than-not basis I am continuing to treat him for his 2005 injury." CP at 203. He further opined that Lunschen's industrial injury objectively worsened between 2005 and 2013. Dr. Kaczmarski relied on the x-rays from 2012 and "repeated orthopedic neurologic testing, consistent with low back pain and left-sided radiating leg pain." CP at 203.

Dr. J. Greg Zoltani, a neurologist, and Dr. Allen Tanner, a chiropractor, performed the IME on Lunschen. The specific focus for the IME was "to determine if there was any objective worsening pertaining to [Lunschen's] industrial injury of January 17th, 2005." CP at 226-27. Dr. Zoltani testified that during Lunschen's examination, Dr. Zoltani observed "pain behavior."[7] CP at 233. Dr. Zoltani opined that according to the records he reviewed, the 2005 injury was resolved when Lunschen returned to work. Dr. Zoltani projected that a strain or sprain normally took six to eight weeks to resolve. Dr. Zoltani further opined that Lunschen's condition did not objectively worsen between the 2005 and the 2012 injury. After hearing a description of how Lunschen injured himself in 2012, Dr. Zoltani testified that the 2012 injury was not related to the 2005 injury. He called it a "new injury." CP at 237.

Dr. Tanner testified that he reviewed a number of records including Dr. Kaczmarski's final report from 2005. This report said, "[N]o permanent impairment was anticipated." CP at 259. Dr. Tanner concluded after reviewing the 2005 and 2012 x-rays that Lunschen had degenerative

---

[7] According to Dr. Zoltani, "pain behavior" is "behavior felt to be out of proportion to any activity or a portion of the exam that's being evaluated that seems out of proportion to what would be expected." CP at 233.

disc disease of the lumbar spine "pre-existing to [2005]." CP at 262. According to Dr. Tanner, degenerative disc disease is "arthritis of the [disc] spaces in the lumbar spine or thoracic or cervical spine. It also includes the facet joints that are separate from the [discs]." CP at 263. He opined that Lunschen's degenerative disc disease was a naturally progressing condition, separate from the 2005 injury, and that the degeneration began before 2005 and had continued up to 2012. Dr. Tanner also opined that based on the records he reviewed, the industrial injury from 2005 did not worsen.

### C.    Jury Instructions

At the close of testimony, the court heard argument about jury instructions. Lunschen proposed jury instructions, at least two of which related to aggravation theories.

Lunschen's proposed jury instruction 11 stated, "A claimant's aggravation of a pre-existing industrial injury condition is compensable when caused by the ordinary incidents of living which a person with the claimant's disability might reasonably be expected to be doing, since such an aggravation is attributable to the condition caused by the original injury." CP at 344. The instruction was based on *McDougle v. Department of Labor & Industries*, 64 Wn.2d 640, 393 P.2d 631 (1964).

Lunschen's proposed jury instruction 15 stated,

> You are instructed that if any injury lights up or makes active a latent or quiescent infirmity or weakened condition, whether congenital or developmental, then the resulting disability is to be attributed to the injury and not to the preexisting condition. Under such circumstances, if the accident or injury complained of is a proximate cause of the disability for which compensation or benefits is sought, then the previous physical condition of the workman is immaterial and recovery may be received for the full disability, independent of any preexisting or congenital weakness.

CP at 348. The instruction cited *Wendt v. Dept. of Labor & Industries*, 18 Wn. App. 674, 571 P. 2d 229 (1977).

The court declined to give both instructions. Regarding Instruction 11, the court ruled, "I don't think that the situation as you've outlined it in Proposed No. 11 applies here because there was no prior disability, and so I will not be giving No. 11." 3 Report of Proceedings (RP) at 155. As to Instruction 15, the court stated, "I just don't think that this is a lighting up case as it's contemplated in [*Wendt*]." 3 RP at 168-69. The court further reasoned that this case was "an aggravation of an industrial injury" and as a result, aggravation instructions were proper. 3 RP at 169. Lunschen excepted to the court's failure to give instructions 11 and 15 asserting, "[T]hey are basically the argument of our entire case." 3 RP at 171.

The trial court instructed the jury regarding the Board's findings of fact. The instruction read in part, "By informing you of these findings the court does not intend to express any opinion on the correctness or incorrectness of the Board's findings." CP at 361. The court also instructed the jury that,

> The findings and decision of the [Board] are presumed correct. This presumption is rebuttable, and it is for you to determine whether it is rebutted by the evidence. The burden of proof is on Thomas A. Lunschen to establish by a preponderance of the evidence that the decision is incorrect.
> When it is said that a party has the burden of proof on any proposition, or that any proposition must be proved by a preponderance of the evidence, or the expression "if you find" is used, it means that you must be persuaded, considering all the evidence in the case, that the proposition on which that party has the burden of proof is more probably true than not true.

CP at 362.

The trial court further instructed that,

Lunschen claims that the findings and decision of the Board are incorrect in that:
> Plaintiff Lunschen contends that his medical condition related to the industrial injury has worsened or become "aggravated" to such an extent that he is in need of additional medical treatment and he also contends that his industrially-related condition is more disabling than it was at claim closure on June 9, 2005.

CP at 363.

9

Regarding the prior industrial injury claim, the court instructed the jury:

> This is an aggravation case. When Plaintiff . . . Lunschen's claim was closed on June 9, 2005, it was determined that there was no permanent partial disability resulting from the industrial injury. That determination is binding on all parties.
> "Aggravation" means a worsening of a condition caused by the industrial injury that results in a need for further treatment.
> The aggravation period in this case is from June 9, 2005 to January 4, 2013.

CP at 366.

The special verdict form asked the jury, "Was the [Board] correct in deciding that Mr. Lunschen's industrially related condition, proximately caused by the industrial injury of January 17, 2005, did not objectively worsen between June 9, 2005, and January 4, 2013?" CP at 382. The jury answered the question, "Yes." CP at 382. The court entered its judgment in accord with the jury verdict. It affirmed the Board's April 22, 2014 order, which sustained L&I's January 4, 2013 order to deny Lunschen's claim.

II. PROCEDURAL BACKGROUND

On August 21, 2012, L&I declined to reopen Lunschen's claim because it found his current need for treatment related to a "new injury or exposure." CP at 63. Lunschen petitioned for reconsideration. On January 4, 2013,[8] L&I issued a notice stating it had reconsidered the August 21 order, determined it was correct, and affirmed. Lunschen appealed the decision to the Board. The Board agreed to hear the appeal. The Board considered the following issue: "Did Mr. Lunschen's condition(s) proximately caused by his industrial injury worsen between June 9, 2005 and January 4, 2013?" CP at 75.

---

[8] January 4 is the second "terminal date."

On February 20, 2014, the Board signed an order with the following findings of fact:

1. On April 9, 2013, an industrial appeals judge certified that the parties agreed to include the Jurisdictional History in the Board record solely for jurisdictional purposes.

2. Thomas A. Lunschen sustained an industrial injury on January 17, 2005, when he was shoveling cement from a Bobcat bucket and he sustained a low back strain that caused pain and a pinch in his low back.

3. On June 9, 2005, Mr. Lunschen had no objective findings and no permanent partial disability proximately caused by the industrial injury.

4. On January 4, 2013, Thomas A. Lunschen had no objective findings and no permanent partial disability proximately caused by the industrial injury.

5. Mr. Lunschen's condition proximately caused by the industrial injury did not objectively worsen between June 9, 2005 and January 4, 2013.

6. Mr. Lunschen's condition diagnosed as degenerative disc disease was not proximately caused or aggravated by the industrial injury between June 9, 2005 and January 4, 2013.

7 Mr. Lunschen sustained an intervening injury on May 29, 2012, while working in his garden using a tool with handles and prongs that required a twisting motion to remove weeds and loosen soil and while doing so he injured his low back.

CP at 60-61. The Board concluded, "Between June 9, 2005 and January 4, 2013, Mr. Lunschen's condition proximately caused by the industrial injury did not objectively worsen within the meaning of RCW 51.32.160." CP 61. It also affirmed the L&I order.

Lunschen filed a petition for review and contested findings 3, 4, 5, 6 and 7, as well as conclusions 2 and 3. On April 22, 2014, the Board denied the petition and in so doing, affirmed the findings of fact, conclusions of law, and order from February 20, 2014.

Lunschen then appealed the Board's April 22, 2014 decision and order to the superior court. He filed a motion for summary judgment asserting that summary judgment was proper because there was no genuine dispute of material fact and "the Plaintiff's industrially related condition(s) objectively worsened or became aggravated between June 9, 2005 and January 4,

11

2013 as a matter of law." CP at 285. He argued that he was entitled to judgment as a matter of law under *McDougle*, 64 Wn.2d 640. In response, L&I argued there was sufficient evidence from which a reasonable juror could find Lunschen's condition did not objectively worsen.

The court held a hearing on the motion for summary judgment on February 20, 2015. The superior court denied Lunschen's motion for summary judgment. The court ruled, "There are material facts in dispute in regard to the issues in this matter; therefore[,] the Plaintiff is not entitled to summary judgment." CP at 387.

On March 9, 2015, the case proceeded to a jury trial. The jury returned a verdict in favor of L&I and the superior court entered judgment on March 27 affirming the Board's decision. Lunschen appeals.

ANALYSIS

I. SUBSTANTIAL EVIDENCE

Lunschen argues that the Board erred by entering findings of fact 3, 4, and 5, as well as conclusion of law 2. We do not review the Board's findings and conclusions but instead the superior court's judgment. We affirm the superior court.

A. Standard of Review and Legal Principles

"Appellate review of claims filed under the [Washington Industrial Insurance Act (IIA)] is fairly limited." *Dep't of Labor & Indus. v. Shirley*, 171 Wn. App. 870, 880, 288 P.3d 390 (2012). Our review of a worker compensation case "is akin to our review of any other superior court trial judgment: 'review is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings.'" *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 180, 210 P.3d 355 (2009) (citations omitted) (quoting *Ruse v. Dep't of Labor & Indus.*, 138

Wn.2d 1, 5, 977 P.2d 570 (1999)).  Substantial evidence is evidence in the record sufficient to persuade a fair-minded, rational person that the premise is true.  *Lewis v. Simpson Timber Co.*, 145 Wn. App. 302, 322, 189 P.3d 178 (2008).

We review for sufficient or substantial evidence, taking the record in the light most favorable to the party who prevailed in superior court.  *Rogers*, 151 Wn. App. at 180-81.  We do not "reweigh or rebalance the competing testimony and inferences, or [] apply anew the burden of persuasion."  *Harrison Mem'l Hosp. v. Gagnon*, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002).  We review the superior court's conclusions of law de novo.  *Hill v. Dep't of Labor & Indus.*, 161 Wn. App. 286, 292, 253 P.3d 430 (2011).

The superior court's review of the Board's decision is de novo.  RCW 51.52.115; *Hill*, 161 Wn. App. at 291.  The superior court does not hear new evidence or live witnesses but instead, the evidence before the Board is presented to the superior court.  RCW 51.52.115.  "[C]ounsel for the litigants adopt unique 'role playing' capacities and 'read' their respective parts to the jury, in the same manner as they would when reading a witness' deposition."  *Lewis*, 145 Wn. App. at 316 (citations omitted) (quoting *Buffelen Woodworking Co. v. Cook*, 28 Wn. App. 501, 503-04, 625 P.2d 703 (1981)).  In the case of a jury trial, the jury is instructed on the findings of the Board on each material issue.  RCW 51.52.115.  The findings and decision of the Board are prima facie correct and the burden is on the challenging party to support its claim by a preponderance of the evidence.  RCW 51.52.115; *Rogers*, 151 Wn. App. at 179-80.

Under the IIA, a claimant must establish four elements to reopen an industrial injury claim on the basis of aggravation.  RCW 51.32.160(1)(a); *Eastwood v. Dep't of Labor & Indus*., 152 Wn. App. 652, 657-58, 219 P.3d 711 (2009).  The claimant must establish by medical testimony and some objective symptoms: (1) a "causal relationship between the injury and the subsequent

13

disability"; (2) aggravation of the injury resulting in increased disability; (3) an increased aggravation between "the terminal dates of the aggravation period"; and, (4) a showing that the "disability on the date of closing the order was greater than the supervisor found it to be." *Eastwood*, 152 Wn. App. at 657-58 (footnote omitted) (quoting *Phillips v. Dep't of Labor & Indus.*, 49 Wn.2d 195, 197, 298 P.2d 1117 (1956)).

B.      Jury Verdict

Lunschen first contends that the Board's determination that he had no objective findings in his 2005 industrial injury and that he had no permanent partial disability as a result of the 2005 injury was incorrect based on the evidence presented. However, we do not review the Board's findings.[9] Although the Board's findings are presumed correct, the trial court did not instruct the jury that they had to accept the findings as true. Our role is to review the superior court's findings for sufficient or substantial evidence and to determine if the evidence supports the conclusions of law. *Rogers*, 151 Wn. App. at 180. We do not review specific findings of the Board.

Lunschen next argues that the medical evidence, taken as a whole, shows that the Board's finding of fact 5 and conclusion of law 2 are incorrect. In finding of fact 5, the Board stated, "Mr. Lunschen's condition proximately caused by the industrial injury did not objectively worsen between June 9, 2005 and January 4, 2013." CP at 60. In conclusion of law 2, the Board stated,

---

[9] Lunschen also argues that the Board improperly considered whether he had permanent partial disability because it was not an issue before the Board. He argues, "It is inappropriate for the Board to determine, in the light of res judicata effect of closures, that Mr. Lunschen did not have an increase in permanent partial disability when he merely alleged a worsening of his condition and requested treatment." Br. of Appellant at 27. This does not appear to be a part of the Lunschen's appeal to the superior court, and therefore, is also not an issue for us to consider. *See* RCW 51.52.140 ("Appeal shall lie from the judgment of the superior court as in other civil cases."); RAP 2.5(a).

"Between June 9, 2005 and January 4, 2013, Mr. Lunschen's condition proximately caused by the industrial injury did not objectively worsen within the meaning of RCW 51.32.160." CP at 61.

The jury was asked one question by special verdict form: "Was the Board . . . correct in deciding that Mr. Lunschen's industrially related condition, proximately caused by the industrial injury of January 17, 2005, did not objectively worsen between June 9, 2005, and January 4, 2013?" CP at 382. In answer to the question the jury responded, "Yes." CP at 382. We do not review the Board directly, we review the superior court. However, in this instance, the Board's finding and conclusion is the same as the superior court's jury verdict. Therefore, despite the incorrect framing of the issue, we will review the superior court's verdict for substantial evidence.[10]

Viewing the evidence in the light most favorable to L&I, the prevailing party, substantial evidence supports the jury's verdict. *See Rogers*, 151 Wn. App. at 180-81. Dr. Kaczmarski released Lunschen back to work in 2005 without any limitations. After Lunschen returned to work, he resumed his previous job for three years until he was laid off. Lunschen stated he did not

---

[10] Lunschen explains his reasoning for assigning error to the Board's findings in his reply brief. He stated that when the jury answered "yes" to the question presented, it adopted all of the Board's findings. We review the superior court action here as we would any superior court judgment. *See Jenkins v. Dep't of Labor & Indus.*, 85 Wn. App. 7, 13, 931 P.2d 907(1996) (stating the jury was not bound by the findings in this case if it found other evidence more persuasive). The jury instructions specifically instructed the jury to presume the findings were correct unless Lunschen disproved them by a preponderance of the evidence. We understand Lunschen's reasoning but disagree with his request to analyze the Board's findings.

15

experience subsequent injuries after 2005 until he hurt himself gardening in 2012. When Lunschen's claim closed in 2005 it did not include a finding of any type of permanent disability.[11] Dr. Kaczmarski testified that if Lunschen had not suffered an injury in 2012 he would not have required care.

Additionally, both Dr. Zoltani and Dr. Tanner concluded that the 2012 injury was a new injury and that Lunschen's 2005 injury did not objectively worsen. Dr. Zoltani stated that a back strain or sprain normally resolves after six to eight weeks and that Lunschen's injury was resolved when he returned to work in 2005. Dr. Tanner concluded that Lunschen had degenerative disc disease of the lumbar spine that preexisted the 2005 injury. He stated that the degeneration began before 2005 and continued up to 2012.

While Dr. Johnson and Dr. Kaczmarski opined that worsening occurred between the terminal dates, other testimony supports a different finding.[12] Lunschen appears to be inviting us to reweigh the evidence and reassess the credibility of the witnesses. We decline this invitation. Sufficient evidence exists in the record to persuade a fair-minded, rational person that Lunschen's condition did not worsen between the terminal dates.

---

[11] Lunschen argues that this is not illustrative of his condition because "ratable permanent partial disability awards begin at 5%. Therefore, a person can have a permanent partial disability of less than 5% without it ever being codified at the closure of [a] claim." Br. of Appellant at 26. First, Lunschen provides no support for this assertion. Second, in the context of sufficiency of the evidence, we look at the entire record to determine whether the jury had substantial evidence to reach its verdict. Therefore, whether or not this is true does not have an impact on the validity of the jury's verdict.

[12] Lunschen argues that Dr. Kaczmarski's testimony is entitled to special consideration. The trial court instructed the jury in accord with this precept. The instruction stated, "You should give special consideration to testimony given by an attending physician. Such special consideration does not require you to give greater weight or credibility to, or to believe or disbelieve, such testimony. It does require that you give any such testimony careful thought in your deliberations." CP at 372. However, we do not reweigh the evidence or reassess the jury's credibility determinations.

Additionally, the jury's verdict supports the superior court's ultimate decision to affirm the Board. To reopen his claim on an aggravation theory, Lunschen was required to demonstrate a causal relationship between his 2005 injury and his 2012 injury, i.e., an aggravation of the injury, and that the worsening warranted further treatment. *Eastwood*, 152 Wn. App. at 657-58. The jury rejected Lunschen's argument that his condition objectively worsened between the two injuries. Lunschen did not prove aggravation and the superior court did not err by affirming the Board's order.

II.     JURY INSTRUCTIONS

Lunschen argues that the court erred by declining to give two of his proposed instructions. He contends that the court prevented him from fully arguing his theory of the case. We disagree.

A.      Standard of Review

A trial court's refusal to give a proposed jury instruction is a discretionary decision that we review for abuse of discretion. *In re Det. of Pouncy*, 168 Wn.2d 382, 390, 229 P.3d 678 (2010). We review jury instruction rulings based on errors of law de novo. *Tuttle v. Allstate Ins. Co.*, 134 Wn. App. 120, 131, 138 P.3d 1107 (2006). Jury instructions are sufficient if substantial evidence supports them, they allow the parties to argue their theories of the case, and they properly inform the jury of the applicable law. *Bodin v. City of Stanwood*, 130 Wn.2d 726, 732, 927 P.2d 240 (1996).

A trial court is under no obligation to give inaccurate or misleading instructions. *Jaeger v. Cleaver Constr., Inc.*, 148 Wn. App. 698, 716, 201 P.3d 1028 (2009). A trial court has broad discretion to determine the number and specific language of the instructions to be given and whether definitional instructions are necessary. *Bodin*, 130 Wn.2d at 732. An error on jury instructions requires reversal only if it is prejudicial. *Stiley v. Block*, 130 Wn.2d 486, 498-99, 925

P.2d 194 (1996). Although the IIA is generally liberally construed in favor of the worker, we do not construe the statute liberally where factual sufficiency is at issue. *Cooper v. Dep't of Labor & Indus.*, 188 Wn. App. 641, 648, 352 P.3d 189 (2015).

B.        Proposed Jury Instruction 15—Lighting Up

Lunschen argues that the court's declining to give his proposed instruction 15, deprived him of arguing his "lighting up" theory. Br. of Appellant at 36. He contends that he was entitled to the instruction because his expert witnesses testified that his degenerative disc disease was lit up by the 2005 injury and that this predisposed him to later re-injure his back.[13] Because Lunschen's prior back condition was not latent but was symptomatic prior to 2005, Lunschen was not entitled to a "lighting up" instruction.

A "lighting up" instruction is appropriate where an industrial injury lit up or "made symptomatic the preexisting and previously quiescent or asymptomatic" condition. *Wendt*, 18 Wn. App. at 678. "A claimant is entitled to [the] jury instruction where the evidence supports that (1) the preexisting condition was *latent*, not symptomatic, and (2) the industrial injury proximately caused the current disability, regardless of a preexisting condition." *Cooper*, 188 Wn. App. at 648. "[A] preexisting condition is not 'lit up' if the weight of the evidence reveals[:] (1) that the condition was symptomatic before the workplace event, or (2) the condition was a naturally progressing condition that would have progressed to symptoms without the injury." *Zavala v.*

---

[13] At trial, Lunschen argued that the 2012 injury could have "lit up" the previous 2005 injury. 3 RP at 167. The court declined to give Lunschen's proposed instruction, stating, "I just don't think that this is a lighting up case as it's contemplated in [*Wendt*]." 3 RP at 168-69. The court further reasoned the "scenario which we have here . . . is not a lighting up of a quiescent condition, but an aggravation of an industrial injury." 3 RP at 169. The argument at trial is different from the one he makes on appeal. Although we need not consider the issue, *See Wallace Real Estate Inv., Inc. v. Groves*, 72 Wn. App. 759, 772 n.7, 868 P.2d 149 (1994) *aff'd*, 124 Wn.2d 881, 881 P.2d 1010 (1994) (stating that because an argument was not raised below, it could not be raised on appeal), we exercise our discretion address it on the merits. RAP 1.2

18

*Twin City Foods*, 185 Wn. App. 838, 862, 343 P.3d 761 (2015) (following *Austin v. Dep't of Labor & Indus.*, 6 Wn. App. 394, 398, 492 P.2d 1382 (1971)).

Lunschen's proposed jury instruction cited *Wendt*, 18 Wn. App. at 677, and read as follows,

> You are instructed that if any injury lights up or makes active a latent or quiescent infirmity or weakened condition, whether congenital or developmental, then the resulting disability is to be attributed to the injury and not to the preexisting condition. Under such circumstances, if the accident or injury complained of is a proximate cause of the disability for which compensation or benefits is sought, then the previous physical condition of the workman is immaterial and recovery may be received for the full disability, independent of any preexisting or congenital weakness.

CP at 348.

Lunschen argues on appeal that his case is factually similar to *Wendt,* 18 Wn. App. at 677. In *Wendt*, a claimant with a previously asymptomatic arthritic condition and a previous industrial injury applied to reopen his closed L&I claim because he had become permanently and totally disabled as a result of aggravation of his condition. 18 Wn. App at 675. We concluded the claimant's industrial injury could have made symptomatic the claimant's previously asymptomatic arthritic condition. *Wendt*, 18 Wn. App. at 677-79. We also concluded that the "lit up" arthritic condition, caused by the prior injury, may have predisposed the claimant to the later injury he suffered and that because of the "lighting up," the jury might have found that he was more disabled than when his prior claim closed. *Wendt*, 18 Wn. App. at 677-79. We held that a "lighting up" instruction should be given where there is substantial evidence to support it because the theory may well be "esoteric" to a jury and to be explained as a general instruction would not suffice. 18 Wn. App. at 676, 679.

Lunschen asserts that his case is like *Wendt* because expert testimony suggested the degenerative disc disease was not a result of natural progression but because of the 2005 injury. However, expert testimony did not provide evidence to support the "lighting up" theory. Lunschen

does not argue, and the evidence does not establish, what Lunschen's back condition was prior to 2005, much less whether Lunschen's back condition prior to 2005 was asymptomatic or would not have naturally progressed. Lunschen's case is dissimilar from *Wendt* because there is no clearly established prior condition and no testimony to show the condition was latent.

Instead, the evidence related to Lunschen's prior back injury established that he seriously injured his mid to low back in 1989 and was out of work for almost seven months. Lunschen continued to experience flare ups of low back pain associated with labor-intensive work and could generally resolve the pain by resting overnight. When Lunschen completed the application to reopen his claim in 2012, he first indicated that the injury was a new incident or injury, but then submitted a declaration stating he mistakenly filled out the form and had not had any new injuries or illnesses since his claim closed. He further stated, "[M]y previous low back and left leg industrial injuries have naturally and progressively worsened over time, and I am now in need of further treatment." CP at 123.

Dr. Kaczmarski stated that Lunschen's condition did not relate to the arthritis in his back. Testimony also showed that Lunschen's degenerative disc disease was a naturally progressing condition, separate from the 2005 injury. Dr. Tanner stated that Lunschen's degenerative disc disease began before 2005 and continued up to 2012.

Lunschen did not provide sufficient evidence to establish he had a previous latent condition that was made symptomatic by the 2005 injury. We conclude that Lunschen's case is unlike *Wendt* and that the superior court did not abuse its discretion in deciding so. The court did not abuse its discretion by declining to instruct on "lighting up."

C.      Proposed Jury Instruction 11—Normal Incidents of Daily Living

Lunschen further argues that the court deprived him of arguing another prong in his defense strategy, that the aggravation was caused by "normal incidents of every day."  Br. of Appellant at 4, 36.  He contends that he provided sufficient evidence to entitle him to his proposed instruction.  Because whether Lunschen had a disability caused by an industrial injury was a genuine issue of fact at his trial, he was not entitled to the instruction.

Lunschen's proposed instruction relied on the test articulated in *McDougle*, 64 Wn.2d 640.  In that case, a claimant sought to reopen his claim for a preexisting industrial injury.  *McDougle*, 64 Wn.2d at 642.  L&I previously closed his claim with a permanent partial disability award.  *McDougle*, 64 Wn.2d at 641.  The court concluded that because the later injury occurred while McDougle was performing tasks that were reasonable for a person with his disability, he was entitled to reopen the claim.  *McDougle*, 64 Wn.2d at 644.

The test for aggravation established in *McDougle* is as follows:

> Aggravation of the claimant's *condition* caused by the ordinary incidents of living—by work which he could be expected to do; by sports or activities in which he could be expected to participate—is compensable because it is attributable to *the condition caused by the original injury*.

64 Wn.2d at 644 (emphasis added).

The case came up for appellate review a second time in *Scott Paper Co. v. Dep't of Labor & Indus.*, 73 Wn.2d 840, 440 P.2d 818 (1968).  In that case, the court addressed the claimant's employer's argument that the claimant should have known to avoid certain activity because of his own understanding of his disability.  *Scott Paper*, 73 Wn.2d at 847.  It clarified the rule from *McDougle* stating,

> It is thus apparent that, in construing the test we set forth in [*McDougle*], when we said, "whether it is something that one with his *disability* would not reasonably be expected to be doing" (italics ours), they have mistakenly assumed

21

> we were speaking of claimant's subjective personally known condition as of the date of the aggravation instead of the department-established disability, i.e. 30 per cent permanent partial disability.
>     We, therefore, hold that, when subjected to the proper criteria, claimant's conduct was such as could reasonably be expected of a man with his disability.

*Scott Paper*, 73 Wn.2d at 847-48. In *Scott Paper*, the court also defined "disability" as, "'[T]he impairment of the workman's mental or physical efficiency. It embraces any loss of physical or mental functions which detracts from the former efficiency of the individual in the ordinary pursuits of life.'" 73 Wn.2d at 842 (quoting *Henson v. Dep't of Labor & Indus.*, 15 Wn.2d 384, 391, 130 P.2d 885 (1942)).

The *McDougle* test applies to an established disability, not an individual's subjective known condition. "[W]hether a claimant's conduct is reasonably expected is determined by whether the claimant's conduct is 'such as could reasonably be expected of *a man with his [department-established]* disability,' not the claimant's 'subjective personally known condition as of the date of the aggravation.'" *Shirley*, 171 Wn. App. at 883 (emphasis in original) (quoting *Scott Paper*, 73 Wn.2d at 848).

Lunschen's proposed instruction read, "A claimant's aggravation of a pre-existing industrial injury condition is compensable when caused by the ordinary incidents of living which a person with the claimant's disability might reasonably be expected to be doing, since such an aggravation is attributable to the condition caused by the original injury." CP at 344.

Lunschen argues that the *McDougle* court did not intend "disability" to be interpreted as "ratable impairment," and thus, he was not required to receive an award of permanent partial disability to be entitled to the *McDougle* instruction. Br. of Appellant at 41. He argues he should

get the instruction because "but for" his injury in 2005, he would not have injured himself in the garden, "participating in his normal activities of daily living."[14]  Br. of Appellant at 39.

Because Lunschen was not awarded permanent partial disability, whether or not he had a condition or disability was a disputed fact.  Lunschen needed to establish a "condition" or "disability" by expert medical testimony.  The instruction he requested, presumed a disability existed.  However, whether the disability existed was a contested issue.   As such, we conclude that the *McDougle* instruction should only be given if the claimant has previously established a disability or condition resulting from the original industrial injury.  Because that is unequivocally not the case here, Lunschen was not entitled to the instruction.  A superior court is under no obligation to give a misleading instruction or an instruction unsupported by the evidence.  *Jaeger*, 148 Wn. App. at 716.  We conclude that the superior court did not abuse its discretion by declining to give the instruction.

III.     ATTORNEY FEES

Lunschen requests attorney fees.  RAP 18.1 provides for attorney fees and costs on appeal if "applicable law grants to a party the right to recover" and the fees and costs are properly requested in the parties' opening briefs.  RAP 18.1(a)-(b).  A party requesting attorney fees must "devote a section of its opening brief to the request for the fees or expenses."  RAP 18.1(b).

Lunschen does not designate a section of his brief to his request for fees.  Instead, he requests attorney fees in the last three paragraphs of his conclusion.  He does cite to the rules and provide some argument.  Regardless, Lunschen requests attorney fees under RCW 51.52.130.

---

[14] L&I argues that it is "[w]ell-established case law" that the *McDougle* test applies only when L&I closes a claim with an award of permanent partial disability.  Br. of Resp't at 31.  Lunschen was not entitled to the instruction because whether he had a disability was at issue.  Therefore, we do not reach whether or not L&I is correct that the test only applies when there is a permanent partial disability award.

RCW 51.52.130 states that "[i]f, on appeal to the superior or appellate court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary . . . a reasonable fee for the services of the worker's . . . attorney shall be fixed by the court." Therefore, Lunschen is not entitled to attorney fees.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

                                              Melnick, J.

We concur:

Johanson, P.J.

Sutton, J.